692 So.2d 1217 (1997)
Brenda BARILLAS
v.
Joan CARRION and Allstate Insurance Company.
No. 96-CA-746.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1997.
*1218 J. William Starr, Metairie, for Plaintiff/Appellant.
James L. Donovan, Jr., Darrin M. O'Connor, Metairie, for Defendants/Appellees.
Before GAUDIN, DUFRESNE and WICKER, JJ.
WICKER, Judge.
This appeal arises from a petition for damages filed on behalf of Brenda Barillas,[1] plaintiff/appellant, against Joan Carrion, and Allstate Insurance Company, defendants/appellees, alleging injuries from a car accident. Carrion reconvened seeking damages from the car accident which involved vehicles driven by Barillas and Carrion. Carrion sued Louisiana Insurance Guaranty Association as the insurer of the losses of Liberty Lloyds Insurance Company, the alleged liability insurer of Barillas. Trial was bifurcated. As to liability, the jury found both Barillas and Carrion to be negligent and assessed Carrion to be 70% at fault and Barillas to be 30% at fault. The jury next heard the quantum claim of Barillas.[2] It found she had sustained injuries in the accident and awarded her $11,000 in general damages and $8,500 for past, present, and future medical expenses. Barillas now appeals on the issue of quantum. We affirm.
We note at the outset we issued a show cause order why the appeal should not be dismissed on the basis the record in this case did not contain a signed final judgment as required for appeal by La.Code Civ.Proc. art. 1911. This record was subsequently supplemented with a signed final judgment in conformity with the jury verdict. The signed final judgment has now cured the defect of a premature appeal, and having found no jurisdictional defect, we consider the merits of the appeal. Overmier v. Traylor, 475 So.2d 1094 (La.1985).
On appeal Barillas specifies the following errors:
1. It was reversible error for the jury to not award Barillas any real amount of damages for pain and suffering;
2. It was reversible error for the jury not to award Barillas at least $48,000 in general damages for her pain and suffering, and
3. It was reversible error for the jury to fail to award Barillas all of the medical bills which total $19,500.
*1219 Barillas notes that the jury awarded a total amount equal to the amount of medical expenses she introduced at trial. She suggests the jury simply split the medical expenses and in effect did not award her any general damages. She further suggests that the amount awarded by the jury for medical expenses does not have a logical cutoff point in bills presented at trial. Barillas, however, fails to note that the jury awarded medical expenses for past, present and future expenses. Future medical expenses are not susceptible to precise mathematical calculation. Bly v. Prudential Property and Cas. Ins. Co., 589 So.2d 495, 497 (La.App. 5th Cir.1991). The jury weighed conflicting evidence as to whether all of the injuries which Barillas alleged were causally related to the accident. Despite appellant's argument in brief that counsel "stipulated" to the medical bills, this court finds no indication in this record that counsel stipulated the bills were for treatment for injuries caused by this accident. The jury made a factual determination as to causation. It heard conflicting testimony from the medical witnesses as to the causal relationship between the treatment and the accident. It evidently concluded Barillas had not sustained all of the injuries alleged from the accident. This factual finding is not reversible unless the jury was manifestly erroneous. Pitard v. Davis, 599 So.2d 398, 401 (La.App. 5th Cir.1992). As discussed below, we find no manifest error in that conclusion. Furthermore, we disagree with appellants' suggestion the jury failed to award damages for pain and suffering since the jury clearly specified an amount for pain and suffering on the verdict form.
It is clear the jury concluded appellant had sustained injuries from the accident but that these were not as severe as she alleged. We now consider whether the jury abused its discretion in its damage award.
Appellant argues the jury abused its discretion in awarding only $11,000 in general damages for six years of pain and suffering. Appellant contends the jury abused its discretion in the award since she suffered for six years with cervical injuries as well as headaches and a Temporomandibular Joint (TMJ) disorder. She contends that the evidence was uncontroverted her injuries were caused by the accident. Further, she notes that all of her treating physicians testified that the treatment which they provided was related to the accident with the exception of Dr. Michael Puente, a neurologist, who only stated the accident may have caused her headaches.
The testimony at trial set forth the following.
Barillas testified as follows. She was involved in an automobile accident on August 13, 1989. Her face hit the steering wheel. The following day she went to Charity Hospital in New Orleans for treatment. At the time of trial she still had a residual scar on her chin from the accident. The Charity Hospital record was introduced at trial. It indicates she was treated for a laceration of the lip and that she had x-rays taken of the spine, mandible, left arm and femur. The bill from Charity Hospital totaled $416.50.
Barillas testified she had neck pain, back pain and headaches following the accident. Although the physicians at Charity Hospital asked her to return, she did not do so. Approximately two weeks later, she began treatment with Dr. Mark Bahr, a Chiropractor. While she improved with Dr. Bahr's treatment, her symptoms returned. She only obtained relief from neck and back pain with Dr. Bahr and had not obtained relief from her headaches. Her internist, Dr. Alden H. Baehr, referred her to Dr. Michael Puente. She was unemployed when she first saw Dr. Puente but was subsequently employed on the later visits.
Dr. Puente prescribed medication which did not alleviate the headaches. She next saw Dr. D.C. Mohnot, a neurologist. Dr. Mohnot prescribed medication for insomnia and for headaches. She only had temporary relief and still continued to have neck pain, back pain and headaches.
She then saw Dr. Francis J. Alessi, an expert in thoracic surgery, on one occasion. She also saw Dr. Edna Doyle, an expert in the field of physical medicine and rehabilitation, who referred her to Bruno Steiner for physical therapy. She went to physical therapy four times a week for 45-minute sessions. *1220 Steiner relieved the pain but she still continued to have headaches.
She testified she saw Dr. Larry McMillan, a prosthodontist, and was still being treated by him at the time of trial. He prescribed a splint. Her headaches have lessened. Her back pain had improved at the time of trial but she still voiced complaints of back pain.
After the accident she was unable to ride a bicycle, do housework, or wash her hair. At the time of trial she was able to resume these activities.
The jury heard testimony from Barillas that she gave inaccurate information under oath when she filled out an affidavit in this court record. She admitted she stated on the affidavit she was not employed when she was actually employed. The affidavit was filed in connection with her request to waive court costs. Barillas also admitted she did not fill out an employment form truthfully because she denied on the form having any injuries where she could not perform her job.
The jury also heard inconsistencies between her testimony and that of Dr. Puente. Dr. Puente testified that when he saw Barillas on January 13, 1992 she complained to him about problems with her husband and with other employees. He made a notation quoting her as saying that people at work were generally giving her a hard time. Dr. Puente concluded the contraction headaches she was having were related to underlying stress in her daily life and not to the accident. He testified he told her this and she voiced her understanding and agreement with this opinion. He explained that on the first visit it was she who told him she was stressed out. He believed she was honest in making that statement.
On the other hand Barillas denied telling Dr. Puente she had work stress or any stress beyond daily life. She testified Dr. Puente told her the headaches were related to the accident. Confronted with inconsistencies in the testimony of Barillas and Dr. Puente, the jury made a credibility determination and gave greater weight to the testimony of Dr. Puente regarding the cause of her headaches at the time she saw Dr. Puente in 1991 and 1992.
Additionally, the jury heard conflicting testimony as to whether symptoms present for up to six years after the accident were caused by the accident. Dr. Puente testified he first saw Barillas September 26, 1991. She complained of headaches following the accident. He saw her October 21, 1991 and January 13, 1992 as well. On examination he found no neurological abnormalities. He also found no muscle spasm in the cervical spine. When he pressed on trigger points in her neck, head, and shoulder area she indicated there was no pain. She was able to move her head freely. He diagnosed her as having chronic tension contraction headaches caused by stress. If her headaches were caused by the accident then these would have subsided from weeks to a few months after the accident. She complained to him about insomnia, and problems with employment. He believed her headaches were related to her personal problems.
Dr. Puente prescribed Elavil, an antidepressant. This medication is used to treat tension or stress headaches. When he saw her on October 21, 1991 she was improved. After he gave an opinion to her attorney that her symptoms were not related to the accident, she no longer saw him for treatment.
Dr. Puente felt the headaches were not related to the accident but were related to everyday problems. Her examination was normal. He felt she needed no further treatment for the accident itself. There was no evidence she suffered post traumatic headaches from the accident.
Dr. Mohnot testified he first saw Barillas April 20, 1992. She complained of headaches. She told him her health was great except for the headaches. On examination he noted soreness or tenderness to touch over the right temple, tenderness at the base of the neck, and mild difficulty in moving her neck in all directions. Otherwise, her examination was normal. He diagnosed post traumatic headaches and neck pain because of the accident. He prescribed medication and recommended further testing. He continued to treat her until September 2, 1994. On that date she was improved but was still having headaches. An MRI of the cervical spine taken May 7, 1992 was normal. An *1221 MRI of the brain was within normal limits. When he last saw her in 1994 she had not yet been discharged. He saw no connection with TMJ and her headaches since jaw muscles have nothing to do with neck muscles.
Dr. Doyle first saw Barillas on January 19, 1995, more than five years after the accident. She diagnosed her as having minor intervertebral derangement. While Dr. Doyle did not relate Barillas' complaints of low back pain to the accident, she did relate her other complaints to the accident. These included the following: tender TMJ joints with jerking of the jaw to the left when she opened her mouth; headaches; pain in the neck and shoulders; pain in the upper chest; pain in the upper back and both arms; stiffness in the forearms; stiff fingers in the right hand; frequent pins and needles in the hands and the feet; pins and needles in the legs; yellow-looking hands, and red dots on the legs. Dr. Doyle examined Barillas and found that her neurological examination was normal. She did note tightness and tenderness in the muscles and referred her to Steiner for physical therapy. On June 27, 1995 Dr. Doyle noted a sacroiliac problem of unknown cause.
Barillas also saw Dr. Alessi in 1994, after she had seen Dr. Puente. Dr. Alessi testified he only saw Barillas one time. He diagnosed her as having an inflammatory reaction in the soft tissues. He described this condition as a type of rheumatism consistent with the history of a car accident. He also diagnosed her as having thoracic outlet compression syndrome. This syndrome results in the inability to raise the extremities for an extended period of time. It also causes headaches. He recommended electromyolography to test for nerve functioning and a repeat MRI. She did not do the further testing.
Barillas was treated by Dr. McMillan on March 9, 1995 for TMJ which he related to the accident. While Dr. Doyle saw obvious signs of TMJ on her examination of Barillas on April 27, 1995, signs of TMJ were not present in Dr. Puente's examination in 1991 and in 1992. Dr. Mohnot also did not relate TMJ to Barillas' headaches.
Dr. Puente stated he is familiar with TMJ and he saw no evidence of a TMJ problem. If she had a mild TMJ problem he would treat it. If it were more severe he would refer her to an oral surgeon. He felt the three visits he had with her were sufficient in order for him to evaluate her. On the other hand, Dr. Doyle noted that Barillas' TMJ joints were very tender and that her jaw jerked to the left when she opened her mouth.
We find no manifest error in the jury's relying on the testimony of Dr. Puente who treated Barillas closer in time to the accident than did Drs. Mohnot, Doyle and Alessi, and who found either no causal relationship with her symptoms to the accident or an absence of the symptoms noted by Drs. Mohnot, Doyle and Alessi.
The jury did conclude that Barillas sustained injuries from the accident. In doing so it must have attached great weight to the testimony of Dr. Bahr who treated her shortly after the accident. Dr. Bahr, an expert in the field of chiropractic medicine, testified as follows. He first saw Barillas on August 31, 1989. She complained of headaches, neck pain and back pain. She also complained of pain in her shoulders, face, legs and chest. He examined her and diagnosed her as having neck and back strain. He felt her symptoms were probably caused by the accident.
Dr. Bahr prescribed traction, electrical stimulation, manipulation, and hot packs. He took x-rays which revealed a loss of the normal spinal curve. Barillas came to his office for regular treatments until February 1, 1990 when he released her. He felt that at that time she had improved greatly. Although he released her in February 1990 he told her to return if she had any problems. Her main complaint at the time of release was occasional headaches associated with neck problems. Barillas returned in March 1990 and in May 1990. In March 1990 she complained of headaches. In May 1990 she complained of headaches and low back pain. She had not complained of low back pain for at least five months. She returned in June 1990 complaining of headaches. He felt her neck pain and headaches were not resolved. His bill totaled $4,310.
*1222 Dr. Bahr saw Barillas shortly after the accident and treated her for approximately nine months. He diagnosed her as having neck and back strain caused by the accident. He released her on February 1, 1990 to return on an as needed basis. As of June 1990 he felt her neck pain and headaches had not resolved. He also noted that she still complained of back pain in May 1990. Thus, he anticipated Barillas' need for further treatment of the neck and back strain.
The jury evidently awarded medical expenses for the Charity Hospital bill of $416.50 and Dr. Bahr's chiropractic bill of $4310. Since Dr. Bahr testified that treatment of the neck and back strain would continue on an as needed basis, the jury evidently based its conclusion to award future medical expenses on this testimony.
However, the jury also evidently attached greater weight to Dr. Puente's testimony that as of 1991 he saw no evidence of a TMJ problem and that her headaches at that time were not related to the accident. It also must have attached greater weight to his testimony that there were no objective signs of problems in the cervical area. However, Dr. Puente gave no opinion as to any low back problem. Thus, the jury evidently allowed medical expenses to cover future treatment of the back strain diagnosed by Dr. Bahr.
Steiner treated Barillas for low back pain as well as her other symptoms. However, Dr. Doyle, who referred Barillas to Steiner, did not attribute her low back problem noted in 1995 to the accident. The jury then had to determine, based on Dr. Bahr's testimony, an amount which would cover Barillas' treatment on an as needed basis for back strain related to the accident.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) the Supreme Court explained at 1261:
the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
The Supreme Court has also reviewed awards for medical expenses under the abuse of discretion standard. See Bessard v. State, Dept. of Transp. and Development, 94-0589 (La.11/30/94) 645 So.2d 1134. We find no abuse of discretion in the award of $8,500 for past, present and future medical expenses since Dr. Bahr testified he had released her from regular care but not from all treatment.
We also find no abuse of discretion in the award of general damages of $11,000 for an injury involving a residual scar on the chin; regular treatment of neck strain, back strain, and headaches for approximately five months after the accident, and treatment for approximately four additional months on an as needed basis. Although "[r]easonable persons frequently disagree about the measure of general damages in a particular case [i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances" that we should increase this award. Youn, supra at 1261.
Accordingly, for the reasons stated, the judgment is affirmed.
AFFIRMED.
NOTES
[1] She is also referred to as Brenda Dunn in the transcript.
[2] Carrion's claim for damages was settled and defendants in reconvention were dismissed with prejudice.