806 So.2d 809 (2001)
Marilyn MOREAU
v.
NORTH AMERICAN FIRE AND CASUALTY INSURANCE COMPANY and Metry Cab Services, Inc.
No. 01-CA-976.
Court of Appeal of Louisiana, Fifth Circuit.
December 26, 2001.
*811 Frank Brindisi, Kenner, LA, and Stephen C. Juan, New Orleans, LA, Counsels for plaintiff-appellee.
David I. Courcelle, Courcelle & Burkhalter, Metairie, LA, Counsel for Defendants-appellants.
Court composed of Judges THOMAS F. DALEY, MARION F. EDWARDS AND CLARENCE E. McMANUS.
McMANUS, Judge.
In this matter, we affirm a judgment awarding damages in favor of Plaintiff-Appellee, Marilyn Moreau.

STATEMENT OF THE CASE
The matter was instituted with a Petition for Damages filed on November 3, 1999, naming as Defendants, North American Fire and Casualty Insurance Company, Metry Cab Service, Inc., and Julius Miller, the driver of the cab. North American and Metry Cab are the Appellants herein.
All Defendants entered a general denial in answer to the suit, and the matter was set for trial.
A bench trial was held on August 23, 2000. At the beginning of those proceedings, the individual Defendant, Julius Miller, was dismissed from the suit. In addition, insurance coverage was stipulated, the total amount of medical special damages was stipulated, and the authenticity of all exhibits was stipulated.
Written judgment in favor of Moreau was entered on January 10, 2001: Damages were awarded in the amount of $13,812.00, which sum represents $10,000.00 in general damages and the stipulated medical specials of $3,812.00. In addition, expert fees in the amount of $450.00 per hour were awarded for the trial appearance of Moreau's treating physician, Dr. Michael Haydel, D.C.
Defendants North American and Metry Cab timely filed a Motion for Suspensive Appeal, and they now urge the following errors:
1. Whether the Appellee, Marilyn Moreau, was solely negligent in causing the subject accident, or whether Appellee, Marilyn Moreau, contributed to the cause of the subject accident;
2. Whether the Appellee, Marilyn Moreau, failed to mitigate her damages, and whether the subject accident caused her symptoms.

FACTS
The suit arises out of an automobile accident that occurred on December 15, 1998, on David Drive in Kenner. Appellee Moreau and witness Jenny Lemoine were driving in a northerly direction on David Drive, and had just crossed over Airline Highway when the accident occurred. The collision occurred as Defendant Miller entered David Drive from an off-street parking lot.
Lemoine described the accident as follows. She stated that she had been traveling in the median lane as she approached the scene of the accident, and had first noticed Moreau on David Drive a "couple of blocks" back from where the accident occurred. She testified that she approached and passed Moreau, who had *812 been traveling in the sidewalk lane, and was approximately a car length and a half ahead of her when the accident occurred. Lemoine stated that immediately after she had passed Moreau the Metry cab pulled out of a parking lot into the sidewalk lane of the street. She testified that she swerved her car to the left because the cab came out of the lot "so fast" and so suddenly that she was afraid the cab would pull into her lane of traffic. She stated that the accident happened very quickly the cab hadn't pulled very far into the street, and she heard tires screeching as she was swerving her car.
Moreau's testimony regarding the accident is as follows. She stated that she had been in the sidewalk lane of David Drive when the accident occurred, traveling at about 40 miles per hour. She had first noticed Miller when she was about a half a block away from the cab, when it was still in the parking lot. She stated that Miller was at first slowly inching up to the street, then, suddenly, "jumped" into her lane of traffic. She stated that he had pulled out "real fast" in front of her, and that she "impacted" him before the cab had pulled totally out of the lot. She stated that she hit the left taillight of the cab; at the moment of impact, the right taillight was still in the parking lot. She testified that though she was not sure, she might have been as far as sixty feet away from the cab when she hit the brakes and began to skid; she stated that she could not have avoided the accident.
Miller testified that he checked oncoming traffic before he exited the parking lot, and that the nearest approaching car had been about a half a block away. He testified that after he had pulled out of the parking lot, straightened out and driven about twenty feet, he heard a screeching noise, and the collision occurred. He testified that the cab had been pushed a couple of feet forward by the impact; he testified that once the cab came to a stop he had not moved it before the investigating traffic officer was on the scene. Finally, Miller testified that he had not seen Lemoine's car in the median lane as she swerved to try to avoid him.
The investigating officer, Deputy Bruce Adams, of the Jefferson Parish Sheriff's Office traffic division, estimated that Moreau had been going 45 miles per hour when the accident occurred. He testified that Moreau's tires had left 66 feet of skid marks on the surface of the road as she tried to stop; the testimony is not clear, however, where the skid marks begin and end. Adams testified that he found Miller's cab stopped twenty-one feet from the exit of the parking lot, which indicated, to him, that Miller had completely straightened out in the lane of traffic before the impact occurred. He did admit, however, that the cab might have been pushed some of this distance by the force of the impact.
The photograph of the cab filed into the record, though it seems to be slightly torn on one side, seems to show heavier damage to the left rear bumper and taillight than on the middle to right side of the bumper.
Moreau's testimony regarding her injuries is as follows. She stated that upon impact, she hit the steering wheel then "backed up" into the back of the seat. She testified that as a result of the impact her neck and left shoulder were injured. She stated that she had not sought medical treatment immediately because she thought at first that the pain would disappear. However, the pain was "persistent" and failed to diminish over the next few weeksshe describes the pain as a constant soreness of the left shoulder with accompanying headaches. When the pain did not resolve, within a couple of weeks, she began to treat with Dr. Michael Haydel, *813 a chiropractor. She treated with Dr. Haydel over the course of several months; she stated that it was probably within a month of having been discharged from his care that the headaches began to go away.
Dr. Haydel testified that he had first seen Moreau on January 6, 1999, with complaints of left shoulder pain and headaches. Dr. Haydel's narrative notes that at Moreau's first visit, he noted severe cervical spasms and moderate to severe pain during the cervical motion exam. Dr. Haydel's diagnosis is that Moreau had suffered a Cervical IVD syndrome; Brachial Plexus Lesion; Brachial Radiculitis; Cervical Myofascitis; and a Thoracic sprain/ strain. He recommended treatment consisting of joint mobilization, cryotherapy, sine wave muscle stimulation and heat therapy. Moreau was prescribed Vicodin for pain and Soma for night use.
Moreau's therapy log shows that for the first month of treatment, she attended therapy six times. Her therapy tapered off over roughly the next month of treatment, then there is a gap in treatment of a little over a month. For the next month of treatment, Moreau returned to weekly treatments. Therapy tapered off again, then, after another brief gap in treatment, the therapy continued to taper off until Moreau was discharged from Dr. Haydel's care. Moreau's last visit with Dr. Haydel was on September 16, 1999.
Dr. Haydel testified that because Moreau had not responded immediately to the therapy, he had ordered an MRI of her cervical spine, the results of which indicated a soft tissue injury. Further, Dr. Haydel testified that over the course of treatment, Moreau's headaches had shown a pattern of varying between being constant and intermittent. Finally, Dr. Haydel testified that it was more probable than not that Moreau's injuries had a direct correlation to her accident.
Regarding Moreau's prior medical history, and the possibility that her history was a contributing factor in her symptomatology, the record shows the following.
Moreau testified that she suffered, and does still, from several chronic diseases. As of the trial, she had been in remission from a condition known as Dermatoyositis. In addition, she was, as of the trial date, still suffering with myositis ossificans, a condition that affects her legs. Finally, Moreau testified that she suffers from hip dysplasia; some of the medical records submitted indicate that this condition is so severe that she will probably eventually need hip replacement surgery.
Although, as Appellants note, Plaintiff did at first deny, during questioning, that she had ever suffered from headaches in the past, she did ultimately admit that this is not so. Indeed, some of the hospital records submitted show that she had been admitted several times, to several hospitals, with migraine, or, "severe" headaches. Plaintiff testified, however, that these headaches had been secondary to her other medical conditions. She testified that the headaches had generally been associated with recurring staph infections caused when the calcium deposits interfere with the circulations in her legs, and that the surgery to alleviate the congestion in her legs also would provide relief from the headaches. Moreau also explained that records of a hospital visit made within a few months before the accident, and which note complaints of headache, reflect an infection of, and treatment for, an E. Coli infection.
Plaintiff testified positively that she had been able to distinguish the myositis ossificans related headaches and those resulting from the accident, which she describes as having lasted "day after day," for "months."
*814 Dr. Haydel's testimony also gave an explanation distinguishing the migraine headaches from those resulting from the accident, headaches of a tension/muscular origin, with pain caused by spasms, or contractions, of the neck muscles.
Finally, Moreau testified that both of her chronic conditions contribute to occasional lumbar spine pain. The hip dysplasia, in particular, can cause pain from her lower back down through her hips and radiating down her legs. She testified that her neck and shoulder symptoms were different from the lower back pain, and she testified positively that she had never suffered from upper back pain before the accident.
The written reasons for judgment include findings on both liability and Moreau's injuries, and in the reasons, the trial judge found,
[T]hat the defendant, Julius Miller, was 100% at fault in the accident. The plaintiff, Marilyn Moreau, was not at fault in the accident.... Following the accident, Ms. Moreau treated with Dr. Michael Haydel for the injuries she sustained in this accident. Ms. Moreau first reported to Dr. Haydel on January 6, 1999 with complaints of left shoulder pain and headaches. Dr. Haydel treated Ms. Moreau until September 16, 1999. Dr. Haydel testified that more probable (sic) than not, Ms. Moreau's injuries and complaints were caused by the accident of December 15, 1998. Ms. Moreau also testified that she was able to distinguish headaches caused by the accident from the type of headaches she suffered with in the past.

ASSIGNMENT OF ERROR NUMBER ONE
As their first assignment of error, North American and Metry Cab argue that the trial judge was in error in assigning 100% of the fault in the accident to the cab driver Miller. They argue that Moreau was at fault in the accident for following too closely behind Miller after he had entered the road from the parking lot, having pulled the cab completely into the lane of traffic.
A trial court's finding of fact may not be reversed absent manifest error or unless clearly wrong. Lasyone v. Kansas City Southern Railroad, State of Louisiana Through DOTD and the Parish of Pointe Coupee Through its Governing Authoroity, the Police Jury of Pointe Coupee Parish, 00-2628, at 5-6 (La.4/3/01), 786 So.2d 682, 688; Stobart v. State of Louisiana, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (numerous citations omitted).
Allocation of fault is a factual determination subject to the manifest error rule. Theriot v. Lasseigne, 93-2661, at 10 (La.7/5/94), 640 So.2d 1305, 1313; Hopstetter v. Nichols, 98-185, at 8 (La.App. 5 Cir. 7/28/98), 716 So.2d 458, 462, writ denied, 98-2288 (La.1998), 731 So.2d 263. We find no manifest error.
*815 The independent witness, Jenny Lemoine, testified that Miller had darted out into oncoming traffic; she testified that she heard the noise of the impact almost immediately after she heard Moreau's brakes screeching. Moreau testified that she had been unable to avoid the collision. In addition, Moreau testified that when she had first seen Miller, the cab had not begun to exit the parking lot. She testified that she had crashed into the left rear of the cab as it entered the lane of traffic, while the right rear of the cab remained on the lot as the vehicles collided. The photograph of Miller's cab supports Moreau's description of the accident. And while Defendants argue that Moreau's inattentive driving contributed to the accident, there is no question that she had seen Miller: she testified that she saw him as he was waiting to exit the lot and simply hadn't been able to stop when he suddenly lurched out into her path.
Finally, we note, and give great weight to, the fact that both Miller and Moreau testified that Moreau had been only a half a block away from the parking lot when Miller checked the oncoming traffic prior to exiting the parking lot. Moreau testified that she had been going 35 miles per hour; the investigating officer testified that she had been going 45 miles per hour. The driver of a vehicle about to enter a highway from a private road, driveway, alley or building shall stop .... and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. LSA-R.S. 32:124. Miller was plainly at fault for having attempted to exit the parking lot when Moreau's vehicle was within a block of the lot and coming towards the lot at at least 35 miles per hour.
We see no manifest error in the trial judge's determination of fault in this matter.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, Defendants North American and Metry Cab argue that the trial judge was in error in relating Moreau's injuries to the accident. Defendants argue that Moreau's complaints of headaches and a back injury predated the accident, as proved by various medical records showing that she had been hospitalized more than once with these specific complaints.
Causation is a fact specific inquiry. The issue is whether a defendant's conduct was, in fact, a cause of plaintiffs harm. Great deference is accorded the trier of fact on the question of factual causation. Rick v. State, Dept. of Transp. and Development, 630 So.2d 1271, 1275 (La.1994); Crane v. Diamond Offshore Drilling, Inc., 99-166, at 19 (La.App. 5 Cir. 9/15/99), 743 So.2d 780, 792-3.
The treating physician, the only testifying physician, related Moreau's injuries to the accident in question. Moreover, both Moreau and Dr. Haydel testified that the symptoms Moreau had suffered in the past were related to her several chronic illnesses, and that though the symptoms may have been similar, they were not identical. When she was questioned by Defendant's attorney, Moreau was able to relate her hospital visits to these conditions. We see no manifest error in the trial judge's positive finding of causation.
Finally, in this assignment of error, Defendants also argue that the gaps in Moreau's treatment amounted to a failure to mitigate her damages.
The doctrine of avoidable consequences bars recovery of those damages which occurred after the initial injury and which might have been averted by reasonable *816 conduct on the part of the plaintiff. Philippe v. Browning Arms Company, 395 So.2d 310, 319 n. 12. The burden of proof is on the defendant to show to what extent plaintiff's damages should have been mitigated and the rule of mitigation of damages is to be applied with extreme caution. Domonter v. C.F. Bean Corporation, 99-1204, at 21 (La.App. 5 Cir. 4/25/00), 761 So.2d 629, 641-2, writ denied, 00-1872 (La. 2000), 770 So.2d 354.
We cannot say that the brief gaps in treatment were of such a nature as to have been any sort of interference with Moreau's treatment or to have rendered the treatment less effective. There was no testimony from Dr. Haydel to say as much; Defendants presented no other evidence that showed as much. Further, Dr. Haydel testified that Moreau's headaches (if not her neck pain) had, over the course of treatment, subsided during some periods of time. We are instructed that the rule of mitigation must be applied with extreme caution; we can't say that the instant matter is one in which it should be applied.
Therefore, for the above reasons, we affirm the judgment of the trial court, with Defendants to bear all costs of this appeal.
AFFIRMED.