858 So.2d 31 (2003)
John J. CARUSO, Jr.
v.
CANAL INDEMNITY COMPANY a/k/a Acord.
No. 03-CA-423.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2003.
*32 Dennis J. Phayer, Marc Devenport, Burglass & Tankersley, L.L.C., Metairie, LA, for Defendant-Appellant.
S. Michael Cashio, Brad Cashio, Kenner, LA, for Plaintiff-Appellee.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD, and EMILE R. ST. PIERRE, Pro Tempore.
EMILE R. ST. PIERRE, Judge Pro Tempore.
Defendant/Appellant, Canal Indemnity Insurance Co., appeals a general damage award rendered in favor of plaintiff/appellee, John J. Caruso, Jr. For the following reasons, we amend in part and affirm as amended.
On January 18, 2000, thirty-nine year old plaintiff, John J. Caruso, Jr., was involved in an automobile accident while parked at a convenience store in Metairie, Louisiana. The accident occurred when another driver, Pamela Reeves, backed her car into the vehicle driven by plaintiff. No police or emergency vehicles were called to the scene. Both drivers exchanged insurance information and departed the scene without need of first aid treatment.
Shortly following the accident, plaintiff began experiencing headaches along with pain and stiffness in his neck for which he sought medical treatment. Plaintiff subsequently settled all claims with Pamela Reeves and her liability insurer, State Farm Automotive Insurance Co., for the full policy limits of $10,000.00. Thereafter, suit was filed against plaintiff's underinsured/uninsured ("UM") provider, Canal Indemnity Insurance Co., for damages over and above the limits of the State Farm liability policy.
At trial the parties stipulated to the liability of Pamela Reeves and the $10,000.00 settlement for the full policy limits. It was also stipulated that Canal Indemnity Insurance Co. provided UM insurance to plaintiff with policy limits of $30,000.00. The sole issue at trial was what damages, if any, should be awarded to plaintiff in excess of the underlying liability policy limits. Plaintiff was the only witness to testify at trial and physicians' reports and hospital records were introduced into evidence in lieu of medical expert testimony.
At the conclusion of trial, the court ruled from the bench, specifically awarding plaintiff an additional $25,000.00 in general damages, over and above the $10,000.00 previously recovered. The trial court did not issue oral or written reasons in conjunction with its judgment.
On appeal, defendant makes the following assignment of error:
In rendering his damage award, the trial judge abused his discretion by ignoring unrebutted medical evidence which thoroughly undermined, contradicted, and discredited plaintiff's purely subjective and self-serving testimony regarding the severity of his claimed injuries.
Louisiana jurisprudence makes clear that, in the absence of manifest error, the amount of damages awarded by a trial court must not be disturbed. "The assessment of quantum or the appropriate amount of damages by a trial judge or jury is a determination of fact, one entitled to great deference on review." Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. "[R]easonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the *33 particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Our review, therefore, is strictly limited to whether the amount of damages awarded by the trial judge to this particular plaintiff is reasonable given the specific circumstances of this case.
At trial plaintiff testified that he suffered from headaches and neck problems ever since the accident. Specifically, plaintiff described ongoing problems with headaches, sharp pain and stiffness in his neck, and also a "clicking" sensation in his neck when he moved his head in certain positions. Plaintiff, a used car dealer and a commercial pilot, testified that his injuries did not cause him to miss any work and that he was still able to perform all work-related activities.
Medical records show that three days following the accident, plaintiff sought medical treatment for his injuries from Stewart E. Altman, M.D. Dr. Altman diagnosed plaintiff with post traumatic headaches and cervical musculoskeletal strain casually related to the accident. Plaintiff visited Dr. Altman's office a total of five times from late January to July of 2000. The treatment consisted of conservative care (hot and cold packs, transcutaneous nerve stimulation, ultrasound therapy) and prescribed medication for pain.
In July, 2000, plaintiff had again been examined by Dr. Altman and plaintiff reported that he still suffered occasional migraine headaches and neck problems. The medical records show that plaintiff was discharged without further appointment to see Dr. Altman.
An MRI scan performed on plaintiff's cervical spine in August, 2000 revealed a "probable muscle spasm" and cervical scoliosis, but the cervical spine otherwise appeared unremarkable or normal.
Plaintiff also sought treatment from a neurologist, John D. Olson, M.D. Dr. Olson's medical records indicate that plaintiff made office visits on February 13, 2001 and May 3, 2001. Plaintiff reported similar symptoms of headaches and neck pain, which Dr. Olson attributed to the accident from a year earlier. Plaintiff was prescribed medication for pain, but no other treatment is indicated from the records.
Plaintiff also testified that on January 11, 2002, he went to the emergency room at Ochsner Hospital because he had been suffering with a migraine headache for an entire week. The trial record only contains a discharge sheet from the Ochsner Hospital Emergency Department indicating that plaintiff was released from the emergency room the same day with prescriptions for Naprosyn and Vicodin to relieve symptoms of pain and a recurrent cough. Plaintiff was further instructed to apply ice to his neck to relieve spasms and contact his primary physician for follow up care. There was no evidence presented that plaintiff sought follow up treatment from his primary physician soon after the emergency room visit.
In all, the records submitted into evidence show that plaintiff's medical bills associated with the accident total $1,295.00. Despite the above-discussed treatment, plaintiff testified that he continued to suffer headaches and neck pain as of the day of trial. Plaintiff stated that he was no longer taking prescription medication but relied instead on over-the-counter drugs such as "Tylenol" to relieve pain symptoms.
The defendant argues that the totality of the evidence presented at trial does not support the trial court's findings as to the *34 severity of plaintiff's injuries and amount of damages awarded. Specifically, defendant cites plaintiff's own testimony as proving the accident at issue to be a very minor collision. Plaintiff testified that he was wearing his seatbelt at the time of the collision and that he did not sustain any cuts, bruises, lacerations, or other outward signs of injury that required first aid or emergency care. In addition, he stated that no wrecker or tow truck was called to the scene and there was no evidence of significant property damage to either vehicle involved in the accident.
The defendant also contends that the trial court ignored medical evidence that undermined plaintiff's testimony as to the severity and duration of pain associated with the accident. Medical records submitted at trial show that nine days following the accident (on January 27, 2000), plaintiff visited his personal physician, Barry Goldman, M.D., at Ochsner Clinic. At no time during the course of the visit did plaintiff indicate that he had recently been involved in an automobile accident and sustained head and neck injures, despite being specifically asked whether he was experiencing any physical or medical problems. Plaintiff testified at trial that he did not report his injuries to Dr. Goldman because Dr. Altman was already treating him for said injuries.
The defendant further cites medical records involving a November 18, 2000 visit by plaintiff to Ochsner Clinic. Plaintiff sought treatment for a knot on his head not related to the accident. At the time, plaintiff indicated that he was feeling well, aside for the complained of knot on his head, and he again did not mention any information regarding head and neck injuries associated with the accident.
This Court's examination of the trial record leads us to conclude that, at best, this is a case of soft tissue injuries and resultant headaches stemming from a low impact collision. The medical records indicate that plaintiff was treated conservatively for approximately sixteen months. Plaintiff testified that he continues to suffer headaches and discomfort in his neck, but there was nothing in the medical records to support the ongoing nature of his injuries. Instead, the medical records reveal an absence of any such complaints whenever he was treated by physicians other than Dr. Altman or Dr. Olson during the time period that he complains of pain. Plaintiff also readily admitted at trial that his injuries did not cause him to miss any work or prevent him from fully performing work activities.
No oral or written reasons were provided, but even under the most deferential standard of review, the amount of damages awarded cannot reasonably be reconciled with the minor nature of the collision involved and the modest injuries sustained by the plaintiff. Accordingly, we find that the trial court abused its discretion in setting the award. Therefore, we amend the award of general damages.
The amount of general damages rendered in this case is greatly disproportionate to awards handed down in other cases involving similar circumstances and injuries.[1]E.g., Wilson v. State Farm Mut. *35 Auto. Ins., Co., 01-0482 (La.App. 3 Cir. 10/3/01), 796 So.2d 869 ($12,000.00 award of general damages for plaintiff involved in rear end collision who received conservative treatment for back and neck soft tissue injuries that had not resolved by the time of trial); Ashby v. Anheuser-Busch, Inc., 98-0350 (La.App. 4 Cir. 9/23/98), 719 So.2d 601 ($9,000.00 award of general damages for plaintiff treated thirteen months for soft tissues as a result of an automobile accident); Quirk v. Board of Supervisors of LSU, 629 So.2d 1345 (La.App. 4 Cir. 1993) ($17,500.00 award of general damages for plaintiff who was treated for over one and a half years for soft tissue injuries which had not been resolved at the time of trial); Moreau v. North American Fire and Cas., 01-976 (La.App. 5 Cir. 12/26/01), 806 So.2d 809 ($10,000.00 award of general damages for plaintiff who was treated nine months for a neck soft tissue injury and headaches); Barillas v. Carrion, 96-746 (La.App. 5 Cir. 3/25/97), 692 So.2d 1217 ($11,000.00 award of general damages for plaintiff treated for nine months with soft tissue to injuries to her neck and back as well as for a scar on her lip and chin as a result of an automobile accident).
The cases cited above reflect a range of general damages far lower than the award rendered by the trial judge in this matter. The defendant urges this court to reduce the amount awarded to plaintiff from $25,000.00 to $7,500.00 over and above the $10,000.00 previously recovered from the liability carrier. Based upon our review of the facts of this particular case, the injuries to this particular plaintiff, and similar case law, we find the defendant's total suggested figure of $17,500.00 to be the maximum amount of general damages the trial judge could reasonably have awarded in favor of plaintiff.
Since stipulated medical expenses were $1,295.00, this Court will recognize that amount in special damages. Thus, plaintiff's total damage recovery herein will be $18,795.00, of which $10,000.00 was previously paid by the liability carrier and $8,795.00 is to be paid by the UM carrier.
For the foregoing reasons, the judgment of the trial court regarding general damages is amended. General damages are amended in favor of plaintiff, John J. Caruso, Jr., and against his UM carrier, Canal Indemnity Company, in the amount of $8,795.00, together with legal interest therein from the date of judicial demand until paid. The remainder of the trial court's judgment is affirmed. All costs to be borne by appellant.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] "If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. In such a review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. In all instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court." Theriot v. Allstate Insurance Company, 625 So.2d 1337, 1340 (La.1993).