983 So.2d 966 (2008)
Christina BENNETT, Plaintiff-Appellee,
v.
LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, et al., Defendants-Appellants.
No. 43,216-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*968 Cotton, Bolton, Hoychick & Doughty, LLP by John B. Hoychick, Rayville, for Appellants, William Marsh and Louisiana Farm Bureau Casualty Ins. Co.
*969 William E. Armstrong, Monroe, for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
CARAWAY, J.
The plaintiff sued the driver of the vehicle who rear-ended her car as she stopped at an intersection to make a right turn. Plaintiff's claim concerned a soft tissue injury to her back, and she additionally sought damage for the future medical expense of breast reduction surgery. The trial court determined that as of the time of trial, 32 months after the accident, plaintiff's back injury had not resolved and that the future surgery was required. Finding those conclusions unsupported by the medical evidence, we reduce the trial court's awards for general and special damages, and as amended, affirm the judgment in favor of plaintiff.

Facts
On the afternoon of December 14, 2004, Christina Bennett traveled north in her compact car on Garrett Road in Monroe when she came to a stop at the intersection of Garrett and Millhaven Roads. She intended to make a right turn. William Marsh followed Bennett in his half-ton pickup truck. Both drivers recalled that Bennett initially stopped at the stop sign as she checked for oncoming traffic before beginning execution of a right turn onto Millhaven Road. Bennett admitted that after the initial stop, she began to move forward a short distance but stopped again due to oncoming traffic. Marsh testified that as Bennett moved forward, he believed she was going to complete the turn so he began looking left to check traffic. He admitted to never looking forward again and to removing his foot from the brake which caused the collision.
Marsh estimated that his truck moved at a speed of 5 miles per hour and a distance of approximately 10 feet into the back of Bennett's car. The right front bumper of Marsh's truck struck the left rear bumper and tail light of Bennett's car. Marsh described the impact as minimal, while Bennett depicted the collision as "hard."[1] The impact caused damage to Bennett's vehicle, but no damage to Marsh's truck. Bennett estimated that the force of the impact moved her car a couple of feet. Marsh did not think the impact moved Bennett's car at all. Marsh recollected that after the accident Bennett's car was partly on Millhaven Road. A police diagram of the accident scene contradicted Marsh's testimony and showed that Bennett's car remained fully on Garrett Road. Marsh was ticketed for following too closely; he paid the ticket without contest.
Bennett, who was 37 years old at the time of the accident, recognized no immediate injury. The following day she began to experience back and neck pain. She saw her treating physician, Dr. Michael Hayward, who prescribed pain medication and gave Bennett a two-day work excuse. She also sought treatment with family practitioner, Dr. Warren Daniel, on December 16, 2004. Dr. Daniel treated Warren for mid and lower back pain until he released her on June 29, 2005.
By mid-February of 2005, Bennett was not responding as Dr. Daniel expected and he referred her to orthopedist, Dr. Douglas Brown. At her initial visit on March 3, 2005, with Dr. Brown, Bennett complained of low back pain which she related to the December 14th accident. Dr. Brown noted that Bennett had increased lordosis or a swayed back condition due to large breasts and a weight condition. Dr. *970 Brown diagnosed Bennett with acute lumbar strain and eventually recommended breast reduction surgery. Dr. Brown concluded that Bennett's acute lumbar strain was resolved by May 10, 2005, after she responded to aggressive physical therapy. Bennett last saw Dr. Brown on August 1, 2005.
Bennett instituted a suit for damages arising from the rear-end collision against Marsh and his insurer, Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau"). Bennett alleged that Marsh was solely at fault in causing the accident and sought damages for the personal injuries she received as the result of the accident. Included in Bennett's claim for damages was a request for the cost of future breast reduction surgery.
After trial of the issues on August 20, 2007, Marsh was assessed with total fault in causing the accident. Bennett received damages for a 32-month injury (date of accident until trial), including $48,000 general damages and $24,354.84 special damages. The special damages awarded included $10,550 for the cost of future breast reduction surgery. On appeal, Marsh contests the fault allocation of the trial court as well as the trial court's determination that Bennett suffered a 32-month injury. Marsh also appeals the general damage award as excessive and complains that the trial court erred in awarding Bennett damages for future breast reduction surgery costs.

Discussion

I.
The trier of fact is required to compare the relative fault of the parties in assessing liability. In allocating fault, the trial court must consider the nature of each party's conduct and the extent of the causal relationship between that conduct and the damages claimed. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Morris v. Flores, 36,932 (La.App.2d Cir.3/7/03), 840 So.2d 1257; McCullin v. U.S. Agencies Casualty Ins. Co., 34,661 (La.App.2d Cir.5/9/01), 786 So.2d 269. Factors which may influence the degree of fault assigned to each party include: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk the conduct created; (3) the significance of what the actors sought by the conduct; (4) the capacities of the actors, whether superior or inferior; and (5) any extenuating circumstances which might require the actors to proceed in haste, without proper forethought. Watson, supra; McCullin, supra. The law of comparative fault is applicable in cases involving automobile accidents. Moore v. Rowland, 32,644 (La. App.2d Cir.3/1/00), 753 So.2d 411; Ortigo v. Merritt, 488 So.2d 1051 (La.App. 2d Cir.1986).
The trial court's apportionment of fault is a factual determination subject to the manifest error standard of review. Moore, supra; Williams v. City of Monroe, 27,065 (La.App.2d Cir.7/3/95), 658 So.2d 820, writs denied, 95-1998 (La.12/15/95), 664 So.2d 451, 95-2017 (La.12/15/95), 664 So.2d 452.
A motorist's duty of care includes the duty to keep his vehicle under control and to maintain a proper lookout for hazards. Williams, supra. A motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. Edwards v. Horstman, 96-1403 (La.2/25/97), 687 So.2d 1007.
La. R.S. 32:81 imposes a duty on a motorist to not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and condition of the highway. A following motorist *971 in a rear-end collision is presumed to have breached this duty and is therefore presumed negligent. Mart v. Hill, 505 So.2d 1120 (La.1987); Boggs v. Voss, 31,965 (La.App.2d Cir.6/16/99), 741 So.2d 139. To avoid liability, a following motorist who rear-ends another vehicle must prove he was not at fault by establishing that he had his vehicle under control, closely observed the lead vehicle, and followed at a safe distance under the circumstances. McCullin, supra; Chambers v. Graybiel, 25,840 (La.App.2d Cir.6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. The following motorist may also avoid liability by showing that the lead motorist negligently created a hazard which he could not reasonably avoid. McCullin, supra; Boggs, supra.
A review of the evidence relating to the issue of party fault in this case reveals no manifest error in the trial court allocation. The undisputed evidence shows that Bennett first stopped at the intersection of Garrett and Millhaven Roads in anticipation of a right turn without incident. Her subsequent movement and second stop precipitated the accident in question. Marsh surmises that Bennett's action amounted to fault as a "second-guess" of her decision to turn right.
The start and stop movement of Bennett's vehicle obviously involved a very slow rate of movement. It occurred while her vehicle remained primarily, if not entirely, on Garrett Road. Her vehicle had not entered the through lane of traffic on Millhaven Road where a sudden stop at a greater rate of speed might have negligently created a hazard.
With Marsh's admission that he failed to look forward as he took his foot off the brake of his truck, and accepting Bennett's version of the events as true, a reasonable trier of fact could have concluded that Marsh was solely at fault in causing the accident which could have been avoided with due diligence. Thus, we affirm that portion of the judgment.

II.
Marsh next contests the $48,000 general damage award. General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty, including pain and suffering. Hunt v. Safeway Ins. Co., 35,306 (La.App.2d Cir.12/5/01), 804 So.2d 724. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. La. C.C. art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Hunt, supra.
Only after an abuse of discretion is disclosed by an articulated analysis of the facts is an examination of prior awards in similar cases proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Hunt, supra. The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact. Locke v. Young, 42,703 (La.App.2d Cir.12/12/07), 973 So.2d 831; Manuel v. State Farm *972 Mutual Automobile Ins. Co., 30,765 (La. App.2d Cir.8/19/98), 717 So.2d 277.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757; Edwards v. LCR-M Corp., Inc., 41,125 (La.App.2d Cir.7/12/06), 936 So.2d 233. Proof must be by a preponderance of the evidence. Maranto, supra. The test for determining the causal relationship is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id.
It is well established in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Touchard v. Slemco Electric Foundation, 99-3577 (La.10/17/00), 769 So.2d 1200. Before recovery can be granted for aggravation of a pre-existing condition, a causative link between the accident and the victim's current status must also be established. Edwards, supra.
The cost of future medical treatment and expenses cannot be precisely measured; however, the plaintiff must still establish future medical expenses with some degree of certainty through medical testimony that such expenses are indicated and their probable cost. Locke, supra; Sepulvado v. Turner, 37,912 (La.App.2d Cir.12/10/03), 862 So.2d 457, writ denied, 04-0089 (La.3/19/04), 869 So.2d 855; Lewis v. State Farm Insurance Co., 41,527 (La. App.2d Cir.12/27/06), 946 So.2d 708.
By the time of her first visit with Dr. Daniel two days after the accident, Bennett's neck and shoulder pain had subsided. Dr. Daniel diagnosed her with lumbar strain which he related to the December 14, 2004 accident. Bennett saw Dr. Daniel a total of fifteen times from December 16, 2004 through June 29, 2005, when he released her because she was "just about back to her usual daily activities." Dr. Daniel did not see Bennett after June 29, 2005 but continued Bennett on medication as needed. During her treatment with Dr. Daniel, Bennett attended physical therapy sessions three times per week. Dr. Daniel estimated that Bennett went to physical therapy a total of 21 times while under his care. He saw improvement in Bennett's back by April of 2005 but in the course of his treatment he had referred her to an orthopedist, Dr. Douglas Brown, in February.
Bennett first saw Dr. Brown on March 3, 2005. In his deposition which was introduced into evidence, Dr. Brown stated that because Bennett was pregnant at his initial visit, he was unable to order any tests, x-rays, a CT scan or MRI but recommended therapeutic exercises. On April 21, Bennett returned after suffering a miscarriage. Her back symptoms remained unchanged. Dr. Brown scheduled an MRI, the results of which were normal except for slight straightening of her lumbar spine attributed to muscle spasms reported by Bennett. Dr. Brown diagnosed Bennett with pre-existing lordosis caused by the weight of large breasts. He stated that both the lordosis and her weight (242 lbs.) made up her physical habitus which contributed to Bennett's lumbar problems.
Bennett returned to Dr. Brown on May 10, 2005. She inquired about breast reduction surgery which Dr. Brown recommended because the weight she carried affected her gait and posture. Dr. Bennett testified that more probably than not, the back pain was caused by the accident and this condition was aggravated by her breast weight and led to a prolonged recovery. *973 Dr. Brown testified that regardless of the accident, Bennett would have ultimately required surgery as a typical patient who develops back pain from swaying of the back and heavy chest weight. Dr. Brown stated that aside from the accident, with Bennett's physical habitus, he would have recommended breast reduction surgery to improve her condition long term.
On May 10, 2005, Dr. Brown determined that Bennett's acute lumbar strain had resolved, but he referred Bennett to more intensive physical therapy to strengthen her abdominal muscles and back. He also indicated that by that date, "her flexibility had improved and she had improved dramatically with physical therapy." Dr. Brown indicated that after May 10, Bennett's pre-existing condition caused the back pain to continue. Dr. Brown last saw Bennett on August 1, 2005, and then attributed her chronic back pain to her physical habitus since her lumbar strain had resolved.
Bennett testified that after Dr. Brown and Dr. Daniel discharged her, she did not see either of them again. She discontinued physical therapy exercises after her back felt better. At the time of trial, Bennett estimated a 80% recovery with a pain level of 6. She claimed she could not stand for a long time and found it difficult to bend forward and sit down in a straight chair. For residual back pain, she used heating pads, warm baths, massage and exercise. Bennett has difficulty with housework and her social activities have changed since the injury. By the time of trial, she only took over-the-counter drugs for pain relief.
Although she testified that she did not suffer back pain before the accident, Bennett admitted that she was treated for back, neck and shoulder pain three times prior to the accident. These instances involved one-time visits to her doctor. The medical records of Dr. Michael Hayward admitted into evidence showed that in 2000, Bennett complained of low back pain from extensive standing.
Bennett's husband, Larry Fuller, testified that Bennett was able to resume her normal household activities by August of 2005 with residual pain until trial. Fuller testified that before the accident, Bennett had occasional back pain.
Although the trial court described the accident as a "low impact encounter," its ruling stated that Bennett's pain from the accident "continues to this day" and defined the period of injury as 32 months. This 32-month period was from the date of the accident through the time of trial, so that implied in the ruling, Bennett's actionable pain and suffering had not resolved in the mind of the trial court. Moreover, the trial court's award for the future medical expense for breast reduction surgery implicitly recognizes the future pain and suffering of that procedure which may have also been factored into the $48,000 award for general damages.
From our review of the record, we find the trial court's assessment of a continuing 32-month (plus) soft tissue injury from this low impact collision to be unreasonable, despite some residual experiences with back pain. The medical records reveal all medical attention and therapy for Bennett's condition ceased by August 2005, less than eight months after the accident. By that time, the resumption of her normal activities had begun and her job, which the record indicates was never substantially impacted by her injury, continued through the time of trial. By the summer of 2005, she had discontinued the physical therapy which had been beneficial to her. She testified that she stopped *974 doing exercises at home because her condition improved.
The two doctors who treated her described the injury as a short-term soft tissue injury. Taking into consideration Bennett's pre-existing condition concerning her body weight, Dr. Brown described his concluding analysis of her condition as follows:
Q. On May 10, 2005, you actually discharged her?
A. I did.
Q. No surgery was indicated? No surgery needed for her back?
A. That's correct.
Q. And her acute lumbar strain was resolved?
A. I felt like it was, yes.
Q. So at that point did you feel that the strains she suffered as a result of the accident had resolved?
A. Yes.
Q. Anything she may have suffered thereafter, would you more probably than not relate it to her physical habitus 
A. I think so.
Q. and preexisting conditions?
A. At least it was in keeping that that was the thing that made her continue to hurt.
Q. And, in fact, I think in your last notes of August 1st, you contribute her chronic back pain to her physical habitus?
A. Yes.
Q. And there's no mention of the accident in those notes?
A. That's correct.
Q. So at this point the accident or the back pain caused by the accident had resolved and now we're looking at a physical problem that preexisted the accident anyway?
A. Right.
Because the judgment erroneously awarded general damages for a 32-month injury, we find an abuse of discretion in the general damage award. Thus, it is necessary that we examine prior awards in similar cases to determine an appropriate damage award. See e.g., Marcum v. Johnston, 32,634 (La.App.2d Cir.1/26/00), 750 So.2d 1186 (award of $5,500 general damages for ten-month neck and lower back soft tissue injury not resolved at trial); Caruso v. Canal Indemnity Co., 03-423 (La.App. 5th Cir.9/16/03), 858 So.2d 31, writ denied, 03-2752 (La.1/16/04), 864 So.2d 631 (reduction of $25,000 general damage award to $17,500 for sixteen-month soft tissue injuries unresolved by trial); Moreau v. North American Fire and Casualty Ins. Co., 01-976 (La.App. 5th Cir.12/26/01), 806 So.2d 809 ($10,000 general damages for nine-month soft tissue injury with unresolved headaches at trial twenty months later); Quirk v. Board of Supervisors of Louisiana State University, 629 So.2d 1345 (La.App. 4th Cir.1993) (general damage award of $17,500 for soft tissue injuries treated for seven to eight months and not resolved by trial over two and one-half years later.) See also, Holford v. Allstate Insurance Co., 41,187 (La. App.2d Cir.6/28/06), 935 So.2d 758 ($25,000 general damage award for soft tissue back injury treated for ten months after accident with residual pain caused by aggravation of pre-existing bulging discs); Henry v. Wal-Mart Stores, Inc., 99-1630 (La. App. 3d Cir.3/1/00) 758 So.2d 327, writ denied, 00-0929 (La.5/26/00), 762 So.2d 1107 (award of $22,000 general damages for ten-month back injury with residual pain caused by aggravation of pre-existing arthritis); Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511 (award of $25,000 general damages for fourteen-month back strain which *975 caused aggravation of pre-existing degenerative arthritis.)
Comparing the facts of this case and Bennett's specific injuries with this jurisprudence, we find the sum of $20,000 to be the highest amount of general damages the trial court could have reasonably awarded Bennett. We therefore amend the judgment to reduce Bennett's general damage award from $48,000 to $20,000.
From the same assessment regarding the extent, magnitude, and continuation of this soft tissue injury, we also find the $10,550 special damage award for future surgery in error. The $24,354.84 award for special damages is likewise reduced to $13,804.84.

Conclusion
For the foregoing reasons, the judgment of the trial court is amended to reduce the general damage award from $48,000 to $20,000 and the special damage award from $24,354.84 to $13,804.84. As amended, the judgment is affirmed. Costs of the appeal are assessed to Bennett.
AMENDED IN PART AND AFFIRMED.
NOTES
[1] The uncontested property damage to Bennett's vehicle totaled $1,401.88.