938 So.2d 741 (2006)
Dewayne ARCHER
v.
Velma HURST and State Farm Mutual Automobile Insurance Company.
No. 2005-CA-1483.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
R. Chris Oetjens, Baton Rouge, Counsel for Plaintiff/Appellant.
Glen Scott Love, Baton Rouge, Counsel for Defendant/Appellee.
Panel composed of Ad Hoc Judges JAMES L. CANNELLA, MARION F. EDWARDS, And SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge, Ad Hoc.
Plaintiff, Dewayne Archer, appeals from a judgment of the trial court that dismissed all claims against defendants in his action for damages resulting from an automobile accident. For reasons that follow, we affirm.
In his petition, plaintiff asserts that he was driving a 1997 Dodge truck westbound on Florida Boulevard in East Baton Rouge Parish on November 3, 2001. When he turned right onto Sharp Lane, he collided with a vehicle driven by defendant, Velma Hurst. Ms. Hurst was traveling west on the parallel service road, and was crossing Sharp Lane at the time of the accident. *742 Plaintiff also named Ms. Hurst's insurer, State Farm Mutual Automobile Insurance Company (State Farm), as a defendant. Mr. Archer avers that the cause of the accident was Ms. Hurst's failure to stop at the stop sign on the corner of the Florida Avenue service road and Sharp Lane.
In due course, the matter went before the bench for a trial on the merits, after which the trial court rendered judgment for the defendants and dismissed plaintiff's action. It is that judgment which forms the basis of this appeal.
It is clear from the testimony at trial and the photos contained in the record that Florida Boulevard is a major intersection with multiple lanes in either direction separated by a median, and additional turn lanes at major intersections. There are service roads with one lane of traffic in each direction on both sides of Florida Boulevard, separated from Florida Boulevard by grassy spaces about ten to twelve feet wide. Sharp Road crosses Florida Boulevard. At that intersection, there is a traffic light. Mr. Archer was traveling westbound on Florida Boulevard, before turning right onto northbound Sharp Road. Ms. Hurst was traveling westbound on the service road to the north of Florida Boulevard. Thus, just before the accident Mr. Archer and Ms. Hurst were traveling parallel to each other, with Mr. Archer on Florida Boulevard and Ms. Hurst on the service road. There is a stop sign on the service road at the intersection with Sharp Road.
Plaintiff, Dewayne Archer testified at trial. He stated that he was driving west on Florida Boulevard, when he stopped for a red light at Sharp Road. When the light turned green, he turned right onto Sharp Road. However, later in his testimony, Mr. Archer stated that the light was red as he approached it but turned green before he got there, so he just slowed down before he turned right. Ultimately, Mr. Archer testified that he thinks he came to a "crawl" stop before turning.
Just after the turn Mr. Archer's truck collided with a car that was traveling west on the service road. The front, passenger side of Mr. Archer's truck struck the rear panel of Ms. Hurst's car. Mr. Archer stated that when the light turned green, he just turned onto Sharp Road. He did not look to see what cars were traveling on the service road.
Mr. Archer stated that at the time of the accident he was on his cell phone, talking to his friend "Robert." When the accident occurred, he told Robert that he would call back, and then dialed 911. Mr. Archer testified that when he first saw the vehicle in his path, he tried to avoid an accident by slamming on his brakes and swerving. In the impact he hit his head on the windshield and jammed his knee under the steering wheel.
Mr. Archer stated that he has had numerous traffic accidents in the past and as a result has had two surgeries on his neck. He recalled at least seven accidents, although he admitted testifying in a prior litigation in December of 2000 that he had at least twenty accidents. When reminded of that former testimony, Mr. Archer admitted he could not recall how many accidents in which he has been involved, nor could he remember the dates of the accidents.
Mr. Archer denied knowing Christopher Whatley, who testified at trial, before the accident and denied calling him from the accident scene.
Corporal Kirk Grover of the Baton Rouge City Police, who investigated the accident, testified that it is the responsibility of the vehicle on the service road, faced with a stop sign, to watch for oncoming traffic before entering the intersection. *743 Corporal Grover interviewed both drivers and two witnesses in the course of his investigation. He stated that Ms. Hurst had almost cleared the intersection when the accident occurred. The damage to Mr. Archer's vehicle was at the front end, and Ms. Hurst's vehicle was damaged on the rear panel. The damages to both vehicles were minor. The police report of the accident was introduced into evidence in connection with Corporal Grover's testimony.
Ms. Hurst also testified at trial. According to her version of the accident, she was traveling westbound on the Florida Boulevard service road just before the accident. She stopped at the stop sign at the intersection of Florida Boulevard and Sharp Road. She looked both ways and saw no traffic coming, so she proceeded across the intersection. There was a truck going in the opposite direction on the service road. It had also stopped at the stop sign and pulled across the intersection at the same time. As she approached the other side of the intersection, her vehicle was struck in the rear by Mr. Archer's truck. Ms. Hurst testified that she remained in control of her car to avoid hitting the truck that was also crossing the intersection at the same time in the opposite direction. She pulled to the side of the road and got out. Upon further questioning, Ms. Hurst stated that there was no traffic coming in either direction on Sharp Road, or any vehicles turning onto Sharp when she entered the intersection. Although, Ms. Hurst could not recall whether the light at Florida and Sharp was red or green, she was certain that there is no turn on red at that intersection, and that there was no truck there when she proceeded across the intersection.
Mr. Brian Bradford testified that he was traveling eastbound on the Florida Boulevard service road just before the accident. He stopped at the stop sign at the intersection of Florida and Sharp. Ms. Hurst was opposite him on the westbound lane of the service road, also stopped at the stop sign. His testimony supports that of Ms. Hurst. Mr. Bradford testified that he looked both ways and saw no traffic coming in either direction on Sharp Road. He further testified that Mr. Archer's truck was not at the intersection of Florida Boulevard and Sharp Road when he looked for traffic. Mr. Bradford stated that the traffic light regulating Florida Boulevard was red at the time he pulled into the intersection after his stop at the sign on the service road. He and Ms. Hurst started across the intersection at the same time, going in opposite directions. Mr. Archer's truck "swung" around the corner without stopping or yielding and hit the rear of Ms. Hurst's car. The impact almost knocked Ms. Hurst's vehicle into Mr. Bradford's. Mr. Bradford testified that he got out of his car and went over to Mr. Archer's truck to see if he was injured. When he approached, Mr. Archer was on his cell phone. Mr. Bradford heard Mr. Archer saying, "Chris, I need you to get around here right away. I've had an accident." Mr. Bradford went over to see if Ms. Hurst was alright. She was shaking and upset. Mr. Bradford tried to calm her and then called 911 to report the accident.
At this point Mr. Bradford's wife, Gera who was a passenger in her husband's car at the time of the accident, called him over to the car. She told her husband that a car had just pulled up on the grass by the corner gas station.
Gera Bradford also testified at trial. Her testimony corroborates that of her husband and Ms. Hurst. She testified that there was no traffic coming in any direction when they pulled away from the stop sign, and that Mr. Archer's truck came around the corner without stopping or yielding. Ms. Bradford stayed in the car after the accident while her husband *744 got out to check on the two drivers involved in the accident. While Mr. Bradford was out of the car, Mrs. Bradford saw a white car pull up on the grass near the corner gas station. The man got out of the car and went over to talk to Mr. Archer. Mrs. Bradford was certain the white car was not there when the accident happened.
Christopher Whatley testified that he was stopped at a red light on Sharp Road heading south, waiting to cross over Florida Boulevard. He saw a truck, heading west on Florida Boulevard turn right onto Sharp Road when the light turned green. When the truck turned, a car traveling west on the service road entered the intersection and the accident occurred about ten feet in front of Mr. Whatley's vehicle. Mr. Whatley could not be sure if the car stopped at the stop sign before entering the intersection. After the accident, Mr. Whatley got out of his car and asked Mr. Archer if he was injured. Then Mr. Whatley pulled into a gas station on the corner and remained to talk to the accident victims and give a report to police.
On cross-examination, Mr. Whatley denied knowing Mr. Archer before the accident. He stated that he lived within a one-half mile from the accident scene and was going to the gas station on the corner of Florida Boulevard and Sharp Road at the time of the accident.
After hearing the testimony and reviewing the evidence, the trial court rendered judgment in favor of defendants, and dismissed plaintiff's action. The trial court's reasons for judgment show that the court considered the discrepancies in the testimony, and ultimately concluded that;
......It is this Court's finding, based on the facts that have been presented, that Ms. Hurst had preempted this intersection prior to Mr. Archer beginning to make his turn from Florida Boulevard onto Sharp.
In brief to this court, plaintiff argues Ms. Hurst breached her duty to stop at the stop sign and that the trial court erred in applying the preemption doctrine. In support of his argument that the trial court erred in applying the preemption doctrine, plaintiff cites Semien v. State Farm Mutual Automobile Ins. Co., 398 So.2d 161 (La.App. 3 Cir.1981) as a factually similar case in which the court found that the preemption doctrine was inapplicable. In Semien, plaintiff stopped at a stop sign before crossing a four-lane favored street. She testified that she looked both ways and felt that the roadway was clear enough to cross safely. She crossed the first two lanes successfully. Plaintiff testified she saw an approaching vehicle on the second two lanes of the favored street, but continued to cross the intersection because she believed she could cross safely. Unfortunately, plaintiff miscalculated and was struck by the vehicle traveling on the favored road. The trial court ruled that plaintiff had preempted the intersection. However, the appellate court reversed, finding that plaintiff violated her duty to yield to vehicles traveling on a favored street.
We find plaintiff's reliance on Semien misplaced. In Semien there was testimony that plaintiff saw the oncoming vehicle, but misjudged her chances of crossing the intersection on time. In the instant case, Ms. Hurst testified that she saw no vehicles when she crossed the intersection. Further, that testimony is corroborated by the testimony of both Mr. and Mrs. Bradford.
La. R.S. 32:123 sets forth the duty of a driver when approaching a stop sign. That statute provides in pertinent part as follows:
A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.

*745 B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
It is clear from the law and facts of this case that Ms. Hurst had the duty to stop at the stop sign and not to proceed until it was safe to do so. In finding that Ms. Hurst did not breach that duty the trial court relied on the preemption doctrine. To be successful, a motorist claiming preemption of an intersection while crossing a favored roadway must show he entered at a time when he had reasonable opportunity to complete the crossing without endangering or impeding the passage of a vehicle on the superior roadway. Williams v. Garner, 268 So.2d 56 (La.App. 1 Cir.1972). As explained in Price v. City of Slidell, 97-2066 (La.App. 1 Cir. 9/25/98), 723 So.2d 455, 460:
In order to preempt an intersection, the motorist must show that he made a lawful entry, at a proper speed, after ascertaining that oncoming traffic was sufficiently removed to permit a safe passage and under the bona fide belief and expectation that he can negotiate a crossing with safety. He must show that he entered the intersection at a proper speed and sufficiently in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle. Id. (citations omitted)
Given the evidence presented in the instant case, we find a factual basis for the trial court's finding that Ms. Hurst preempted the intersection. Accordingly, we do not find manifest error in the trial court's finding that Ms. Hurst had preempted the intersection and that Mr. Archer was at fault. See; Stobart v. State, through Dept. of Transp. and Develop., 617 So.2d 880 (La.1993).
There is testimony from Ms. Hurst and the Bradfords that Mr. Archer was not stopped at the red light on Florida Boulevard as he first stated. Although the testimony of Ms. Hurst and the Bradfords is consistent and definite, Mr. Archer's testimony is contradictory as to whether he actually stopped for the red light, and where he was when Ms. Hurst first entered the intersection. Further, there is some question as to whether the second witness, Christopher Whatley, is credible.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.