980 So.2d 5 (2008)
George BITTNER
v.
Ronald SCOTT, Jeffery M. Scott and Safeco Insurance Company.
No. 07-CA-718.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
*7 W. Patrick Klotz, Klotz & Early, Attorney at Law, New Orleans, Louisiana, for Plaintiff/Appellee.
Andrew W. Eversberg, Guglielmo, Marks, Schutte, Terhoeve & Love, Attorney at Law, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
Plaintiff, George Bittner, filed suit for damages he received when the motorcycle he was driving was struck by an SUV. Made defendants in the suit were Ronald Scott, owner of the SUV, Jeffrey Scott, driver, and General Insurance Company of America[1] ("General"), the Scott's automobile liability insurance carrier[2].
Prior to the trial on the merits, the parties stipulated that the insured, Jeffrey Scott, was at fault for the motor vehicle accident. Plaintiff further stipulated that his damages did not exceed $50,000.00 exclusive of interest and costs.
After trial on the merits, the court rendered judgment in favor of plaintiff, and awarded damages, as follows  general damages of $35,000.00, past medical expenses of $13,595.09, and damages for property damage to his motorcycle of $3,046.00. General filed a motion for appeal from this judgment, challenging the amount of the damage award.
The facts of the accident, not in dispute in this appeal, were summarized by the trial court as follows:
On [September 19, 2004], the plaintiff, George Bittner (hereinafter referred to as Bittner), was traveling West on his 1995 Harley Davidson Sportster motorcycle on Veterans Boulevard, and had just passed the intersection of Veterans Boulevard and Severn Avenue when he noticed an automobile that had been headed East on Veterans Boulevard in the U-turn lane. Bittner testified that he expected the automobile to stop because of the westbound traffic, but the automobile did not stop, but struck him and his motorcycle which (sic) such force as to knock the front bumper off the automobile.
At trial, the plaintiff testified that after the accident he was taken by a friend to East Jefferson General Hospital, where he *8 was examined and x-rayed. He sustained a fractured toe, as well as cuts and bruises on his elbows. The accident also caused an aggravation of prior back and neck injuries that he had sustained in a prior accident some sixteen months earlier.
Plaintiff sought medical treatment with Dr. Ott, who diagnosed injury to his left lower leg, ankle, and foot, with a fractured great left toe, an aggravation of his previous neck and low back pain. Dr. Ott recommended MRIs of his neck, back and thoracic spine. These tests were conducted five moths post accident by Magnolia Diagnostics at a cost of $1,960.00. In his patient notes of September 21, 2004, Dr. Ott diagnosed lumbar strain aggravating chronic low back pain, and cervical strain aggravating chronic cervical strain. Dr. Ott further recommended physical therapy. Plaintiff underwent physical therapy September through December, 2004, at a cost of $1,729.20.
Plaintiff testified that, prior to the accident, he had been treated by Dr. Shamsnia, with the New Orleans Neurological Assessment Center. He was examined by Dr. Shamsnia after the accident. His visit cost $495.00.
In December of 2004, plaintiff sought treatment with Dr. Hudson for pain management. He related to Dr. Hudson that he had been in a motorcycle accident which worsened his symptoms. Plaintiff testified that he was unable to continue treatment with Dr. Hudson because he was unemployed and had no health insurance.
Plaintiff testified that he was scheduled to see a neurologist at Charity Hospital when Hurricane Katrina landed. He went first to Florida, and then to Houston. While in Houston, from September 2005 through December 2005, he was treated at Ben Taub Hospital. At Ben Taub, he was prescribed medicines and an MRI of his lower spine was taken. He also was given an epidural steroid injection, which provided relief for approximately one week. Plaintiff stated that at that time surgery was discussed as an option, however, he could not afford it.
At trial, plaintiff testified that his foot injury had not yet resolved, and that it hurt whenever he took a step. He further testified that the aggravation to his neck and back was ongoing, that the pain was worse than before his accident, and that he could not longer do things he was able to do before this accident.
On cross examination, plaintiff testified that he was involved in a prior accident on July 21, 2003, when the car he was in was rear-ended. He was treated by Dr. Altman from July until February of 2004. During the course of the treatment, Dr. Altman recommended a neurological examination, and MRIs of both his neck and lower back. He was treated by Dr. Hamsa in April of 2004, and he recommended an EMG and a nerve conduction study. These tests were conducted two weeks before his motorcycle accident. Plaintiff was diagnosed with radicular pain in his arms, from a suspected herniated disc in his neck, cervical spondylosis, and cervical discogenic sprain. Plaintiff acknowledged his neck and numbness problems were on going before the current accident, but stated that this accident made it worse.
In response to cross examination, plaintiff stated that he had a significant increase in pain that was still on-going at the time of trial.[3]
Plaintiff also testified at trial that he had his motorcycle towed to B & B Racing, *9 who gave him an estimate of $3,046.00 to repair the damage.
In this appeal, General alleges that the trial court erred in finding that plaintiff met his burden of proving that his pre-existing injuries [and exacerbation thereof], and resulting medical bills were causally related to the accident; the trial court erred in its award of special damages for medical bills; the general damage award was excessive, and; the trial court erred in awarding damages in excess of the amount stipulated.
General further asserts that the trial court erred in casting Jeffrey Scott in judgment when he was never joined as a defendant and never made an appearance
In the case of Rabalais v. Nash, XXXX-XXXX (La.3/9/07), 952 So.2d 653, 657, the Louisiana Supreme Court once again set forth the standard of review to be applied to factual determinations of the trial court:
It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Blair v. Tynes, 621 So.2d 591, 601 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). To reverse a fact-finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987). Where the jury's findings are reasonable, in light of the record viewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous, or clearly wrong. Blair, supra.

The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La. 1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Where there are two permissible views of the evidence, the fact-finder's choice cannot be manifestly erroneous or clearly wrong. Stobart, supra.

Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, supra.

The standard for appellate review of general damages has been stated by the Louisiana Supreme Court as:
General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La.App. 2 Cir.1993). *10 Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; Hollenbeck v. Oceaneering Int., Inc., 96-0377, p. 13 (La.App. 1 Cir. 11/8/96); 685 So.2d 163, 172. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1260.
As we explained in Youn:
Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.
Id. at 1261.
The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv., Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089; Reck v. Stevens, 373 So.2d 498 (La. 1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Duncan v. Kansas City Southern Railway Co., 00-0066 (La.10/30/00), 773 So.2d 670, 682-3. See also Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802, 808-9.
Defendants first argue that the trial court erred in finding that plaintiff's injury and medical bills were casually related to the accident, and not as a result of his prior medical condition. Defendants also argue that the trial court's general damage award was excessive.
"It is well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Where defendant's negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation." (Citations omitted.) Touchard v. Slemco Elec. Foundation, 99-3577, pp. 5-6 (La.10/17/00), 769 So.2d 1200, 1204.
A plaintiff in a personal injury case has the burden of proving by a preponderance of the evidence that the accident more probably than not caused a claimed disabling condition. Jones v. Peyton Place, Inc., 95-0574, p. 12 (La. App. 4 Cir. 5/22/96), 675 So.2d 754, 763. The test for determining the causal relationship between an accident and a subsequent injury is whether the plaintiff proved through medical or lay testimony that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603, p. 3 (La.2/20/95), 650 So.2d 757, 759; Jones, 95-0574 at p. 13, 675 So.2d at 763.
Chavers v. Travis, 04-0992 (La.App. 4 Cir. 4/20/05), 902 So.2d 389, 394.
In this case, the plaintiff introduced medical records that showed that he suffered a broken bone in his foot; injury to his left lower leg, foot and ankle; and aggravation to his back and neck. The *11 records and plaintiff's own testimony further reflect that his back injury worsened his pain. We cannot say that the trial court committed manifest error in finding that the automobile accident in question exacerbated plaintiff's condition and that there was a casual connection between the accident and the damages awarded.
Defendant argues that the trial court erred in awarding $35,000.00 in general damages for what they allege was a three month soft tissue injury. At the time of trial, some fifteen months post accident, the plaintiff testified that his foot continued to hurt as a result of the injury sustained during the accident, and that the aggravation of his back and neck injury continued, to the extent that he could no longer do odd jobs and chores that he was able to perform prior to the accident at issue. Given the vast discretion afford to the trial court in awarding damages, we cannot say that the trial court abused that discretion in awarding damages.
Defendants also allege that the trial court erred in making an award in excess of $50,000.00 when plaintiff stipulated, prior to trial, that his cause of action did not exceed $50,000.00, and further that the trial court erred in casting Jeffery M. Scott in judgment when he was never served and he did not make an appearance in the suit.
The trial court rendered a damage award of $51,641.09 in total. Plaintiff, in brief, concedes that he stipulated that his damages did not exceed $50,000.00. Accordingly, we reduce the general damage award to $33,358.91, thereby reducing the total award of damages to $50,000.00.
Furthermore, we find that the trial court erred in rendering judgment against Jeffery Scott individually. LSA-C.C.P. art. 6 provides impertinent part that:
A. Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:
(1) The service of process on the defendant, or on his agent for the service of process, or the express waiver of citation and service under Article 1201.
Since service of process was never made on Scott, he was never a defendant to this suit, and the trial court was without jurisdiction to render a judgment against him. Frazier v. U.S. Fidelity and Guaranty Co., 394 So.2d 692 (La.App. 3 Cir.1981).
For the above discussed reasons, the judgment of the trial court against Jeffery M. Scoot is annulled. The judgment rendered in favor of plaintiff and against General Insurance Company is amended to reduce the award of general damages to $33,358.91, and in all other respects is affirmed. Costs are assessed against appellant.
AMENDED AND AFFIRMED.
NOTES
[1] Referred to in plaintiff's petition as "Safeco Insurance Company."
[2] Only defendant General Insurance Company of America was served with, and participated in, this suit.
[3] In response to defense counsel's question, "And you simply had an increase in pain after the motorcycle accident," the plaintiff responded, "Very much so."