LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY
v.
SUSAN L. PERRICONE, LIVINGSTON PARISH SCHOOL BOARD AND LOUISIANA AUTOMOBILE RISK MANAGEMENT AGENCY.
LYNDA EASLEY
v.
SUSAN PERRICONE AND TANGIPAHOA PARISH SCHOOL BOARD[1]
No. 2009 CA 1176, Consolidated with No. 2009 CA 1177.
Court of Appeals of Louisiana, First Circuit.
March 30, 2010.
Not Designated for Publication.
GLENN LIEBERMAN, New Orleans, LA, Attorney for Plaintiff-Appellee, Lynda Easley.
CAREY T. JONES, Denham Springs, LA, Attorney for Defendants-Appellants, Susan L. Perricone and Livingston Parish School Board.
Before: PARRO, KUHN, and McDONALD, JJ.
PARRO, J.
In this personal injury action, the defendants appeal a judgment in favor of the plaintiff, contending that the award of general damages was excessive and the award of future medical expenses was improper.[2] For the following reasons, we reverse in part, amend in part, and as amended, affirm in part.

Factual Background and Procedural History
On February 24, 2005, Susan L. Perricone (Perricone), a bus driver for the Livingston Parish School Board (School Board), rear-ended Lynda N. Easley (Easley), who was stopped behind a vehicle that was waiting to make a left turn. Easley declined medical service at the scene but visited her family physician the next day. Two months later, she was seen by a neurosurgeon, who prescribed physical therapy. One month later, she returned to the neurosurgeon, and he ordered an MRI. She had also started receiving treatment from a chiropractor on May 12, 2005, and continued to receive regular treatment from this chiropractor through June 29, 2007.
Following the trial of this matter, the trial court awarded the following in Easley's favor: $9,729.25 in past medical expenses (subject to a $5,000 credit to reimburse Easley's insurer for medical payments made on her behalf); $75,000 in general damages; $2,500 in future medical expenses; and $2,009.65 in costs. Perricone and the School Board (collectively referred to as School Board) appealed.

Discussion
Relative to the general damage award, the trial court found that, as a result of the accident, Easley suffered "neck, cervical, thoracic, and left knee pain," as well as headaches. The trial court noted that the general consensus was that Easley suffered a soft tissue injury that caused her continuing pain at varying levels in the upper back from the date of the accident, February 24, 2005, through at least the date that she was released from the chiropractor's care, or June 29, 2007. Because of this pain, she experienced a severe problem with sleeplessness and a general loss of quality of life.
The School Board correctly noted that Easley had been treated for degenerative changes in her cervical spine prior to the accident. In an effort to relate her continued pain to her pre-existing condition, the School Board points to medical testimony that a soft tissue injury to the neck usually resolves within six months.
Dr. John R. Clifford, a neurosurgeon, testified that he treated Easley in March 2000 for pain between her shoulder blades and in her neck. She had an arachnoid cyst in her thoracic spine. Once Dr. Clifford surgically removed the cyst, Easley was fine.
Based on Easley's history of neck and shoulder pain, an MRI of the cervical spine had been performed on March 9, 2004. That test was requested by "M. Field," an orthopedic surgeon. At trial, Easley testified that she could not recall what brought on the pain that caused her to seek medical care at that time. The results of that MRI revealed minimal degenerative change at the C5-6 level. Dr. Field treated her with an injection and prescribed Flexeril. According to Easley, her condition had completely resolved six to eight months prior to the February 24th accident.
Easley testified that the impact of the collision was pretty hard, causing her left knee to hit the dashboard. In addition to experiencing pain in her knee, she noticed problems with her neck immediately after the accident. She was seen by her family doctor, Dr. Vincent V. Tumminello, the day after the accident, complaining of throbbing pain in her neck and between her shoulder blades, as well as pain in her knee and headaches. The radiology report prepared in connection with x-rays of the thoracic spine, cervical spine, and left knee taken on February 25, 2005, reveals:
THORACIC SPINE:
No fracture or dislocation evident. Slight spurring, but no significant joint space narrowing. Small area of increased density on the lateral view is not seen on the frontal view and is probably an overlying granuloma within the lung.
CERVICAL SPINE, FOUR VIEWS:
Normal study.
AP & LATERAL LEFT KNEE:
No fracture or dislocation. No arthritic change. Small benign appearing 2-3 mm osteomas are seen in the lateral distal femur and the upper fibula.
In the latter part of April 2005, Easley returned to Dr. Clifford and again sought treatment for complaints similar to those treated previously. Dr. Clifford's diagnosis was soft tissue injury referable to her neck. He ordered physical therapy, prescribed muscle relaxants, and advised her to apply heat and ice. She returned to see him on May 20, 2005, at which time she exhibited persistent soreness and tenderness of the supporting muscles between the shoulder blades. She reported a significant increase in her symptoms when she turned her head to the right. She also indicated that the pain was interfering with her ability to sleep. An MRI, performed on June 2, 2005, revealed minimal central disc bulges at the C3-4, 4-5, and 5-6 levels of the neck. Dr. Clifford opined that these bulges pre-existed the accident. According to Dr. Clifford, most soft tissue injuries resolve within six months. However, he explained that every now and then they may hang around for longer periods of time, eventually resolving.
When Easley began seeing Dr. Robert W. McLuckie, a chiropractor, on May 12, 2005, she complained of neck pain, upper back pain between her shoulders, and headaches. She was also having difficulty turning her head and was having trouble sleeping because of the pain. Gradually, her symptoms decreased as a result of the treatments provided by Dr. McLuckie between May 12, 2005, and June 29, 2007. According to Easley, following her discharge, she occasionally experienced residual discomfort in her left knee and upper neck, for which she had sought treatment from Dr. McLuckie. Although Easley testified that she returned to see Dr. McLuckie after discharge on an as-needed basis, Dr. McLuckie's medical records do not evidence a return visit by Easley.
In his deposition, Dr. McLuckie[3] opined that Easley would continue to have problems with her neck for a long time, possibly the remainder of her life, due to the length of her neck and the severity of the "jar" that occurred in the accident.[4] However, he was not questioned, nor did he testify, about the possibility or probability of Easley's need for further medical treatment. Nonetheless, the trial court found that more likely than not, Easley's neck injury would extend into the foreseeable future, requiring her to receive chiropractic and massage therapy maintenance.
According to Easley, her pain immediately after the accident was an eight or nine on a scale of one to ten. Over the next 28 months, her pain level gradually decreased to about a three by June 29, 2007, when she was discharged by Dr. McLuckie. There was no evidence that Easley's injuries, at any point, precluded her from working after the accident; nor was there any evidence of the extent to which her injuries inhibited her normal daily activities. At the time of trial, she rated her occasional pain as a two or three. Admittedly, there were times when she no longer experienced any pain.
In light of this evidence, the School Board contends that the general damage award of $75,000 is excessive. General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La. App. 1st Cir.), writs denied, 605 So.2d 1373 and 1374 (La. 1992). The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. Jenkins v. State ex rel. Dep't of Transp. and Dev., 06-1804 (La. App. 1st Cir. 8/19/08), 993 So.2d 749, 767, writ denied. 08-2471 (La. 12/19/08), 996 So.2d 1133. Much discretion is left to the judge in the assessment of general damages. LSA-C.C. art. 2324.1. In reviewing a general damage award, a court does not review a particular item in isolation; rather, the entire damage award is reviewed for an abuse of discretion. Smith v. Goetzman, 97-0968 (La. App. 1st Cir. 9/25/98), 720 So.2d 39, 48. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only after it is determined that there has been an abuse of discretion is a resort to prior awards appropriate, and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332, 335 (La. 1976); Moss v. State, 07-1686 (La. App. 1st Cir. 8/8/08), 993 So.2d 687, 704, writ denied, 08-2166 (La. 11/14/08), 996 So.2d 1092.
The trial court obviously found Easley's testimony to be credible. Based on her testimony and the corroborating medical evidence, the trial court apparently determined Easley's post-accident condition to be causally related to the accident. We find no manifest error in these findings.
Nonetheless, based on our review of the record, we find that the trial court abused its discretion in assessing general damages, which we agree are excessive. After reviewing the jurisprudence and comparing awards for similar injuries, we find that an award of $35,000 is the highest reasonable amount for Easley's injuries. See, e.g., Bennett v. Louisiana Farm Bureau Cas. Ins. Co., 4,216 (La. App. 2nd Cir. 4/30/08), 983 So.2d 966, 974-75 (reduction of $48,000 general damage award to $20,000 for soft tissue back injury, treated for less than eight months after accident, with some residual experiences with back pain); Bittner v. Scott 07-718 (La. App. 5th Cir. 2/6/08), 980 So.2d 5, 11 ($35,000 in general damages for a fractured toe, injury to his left lower leg, foot, and ankle, and aggravation to his back and neck where, some fifteen months post accident, his foot pain and the aggravation of his back and neck injury continued to the extent that he could no longer do odd jobs and chores that he was able to perform prior to the accident at issue); Tremblay v. Allstate Ins. Co., 05-0956 (La. App. 4th Cir. 3/21/07), 955 So.2d 700, 704-05 ($40,000 for general damages to motorist with preexisting lower back complaints, who suffered cervical and thoracic injuries with a decreased cervical range of motion of approximately 40 percent and loss of mobility in left shoulder of approximately 30 percent, requiring treatment for over a 15-month period throughout which the motorist complained of headaches, finger numbness, stiffness, lack of mobility, back and shoulder pain, and muscle spasms); Caruso v. Canal Indemnity Co., 03-423 (La. App. 5th Cir. 9/16/03), 858 So.2d 31, 35, writ denied, 03-2752 (La. 1/16/04), 864 So.2d 631 (reduction of $25,000 general damage award to $17,500 for sixteen-month soft tissue injuries unresolved by trial); Marcum v. Johnston, 32,634 (La. App. 2nd Cir. 1/26/00), 750 So.2d 1186, 1190-91 (award of $5,500 general damages for ten-month neck and lower back soft tissue injury not resolved at trial); Quirk v. Board of Supervisors of Louisiana State University, 629 So.2d 1345, 1347 (La. App. 4th Cir. 1993) (general damage award of $17,500 for soft tissue injuries treated for seven to eight months and not resolved by trial over two and one-half years later.) See also Holford v. Allstate Insurance Co., 41,187 (La. App. 2nd Cir.6/28/06), 935 So.2d 758, 763 ($25,000 general damage award for soft tissue back injury treated for ten months after accident with residual pain caused by aggravation of pre-existing bulging discs). Cf. Moore v. Kenilworth/Kailas Properties, 03-0738 (La. App. 4th Cir. 1/7/04), 865 So.2d 884, 894-95, writs denied, 04-0348 (La. 4/2/04), 869 So.2d 882, and 04-0367 (La. 4/2/04), 869 So.2d 883 ($75,000 in general damages for a couple of months of dizziness and ringing in her ears, cervical and lumbar strains, and a compression fracture at the L1 vertebra).

Decree
In light of the plaintiff's concession in her brief, that portion of the judgment of the trial court awarding $2,500 in future medical expenses is reversed. For the foregoing reasons, the judgment also is amended to reduce the general damage award to $35,000. As amended, the judgment is otherwise affirmed. Costs of this appeal are assessed to Lynda N. Easley.
REVERSED IN PART; AMENDED IN PART; AND AS AMENDED, AFFIRMED IN PART.
NOTES
[1] Of these two consolidated suits, the lower-numbered one was settled prior to trial.
[2] Liability is not an issue in this appeal. Since the plaintiff correctly concedes in her brief that the award of future medical expenses was improper, we will reverse that award.
[3] Notably, Dr. McLuckie did not have knowledge of Easley's pre-existing condition or the treatment that she had previously received.
[4] Perricone testified that she was traveling between 20 and 25 miles per hour as she approached the curve. Upon observing one of her fellow bus drivers in the area, the leftturning vehicle, and Easley's vehicle, she had very little time to react. She pressed on her brake and attempted to veer to her right.