STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0228

MIGUEL RAMOS

VERSUS

LOUISIANA FARM BUREAU CASUALTY INSURANCE
COMPANY AND TYLER B. BENNETT

Judgment Rendered: _____ **DEC 0 9 2021** _____

* * * * *

Appealed from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
No. C662850

The Honorable Donald Johnson, Judge Presiding

W I L TII
lard aw

Lw

* * * * *

| | |
|---|---|
| William C. Rowe, Jr.<br>Joseph S. Manning<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellants,<br>Louisiana Farm Bureau Casualty<br>Insurance Company and<br>Tyler Bennett |
| Lauren E. Cavalier<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee,<br>Miguel Ramos |

* * * * *

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

Mc Donald, J. Concurs and assigns
reasons. By lw

**WOLFE, J.**

In this suit arising from an intersectional collision, the defendant driver and his insurer appeal the trial court's judgment determining the defendant driver was 100% at fault and awarding damages beyond the amount stipulated by the plaintiff. We amend the trial court's judgment and, as amended, affirm.

## FACTS

On July 25, 2017, shortly before 11:00 p.m., Miguel Ramos and Tyler Bennett were involved in an automobile accident at the intersection of Coursey Boulevard and Airline Highway in Baton Rouge, Louisiana. Ramos was driving his 2008 Nissan Titan truck westbound on Coursey Boulevard and entered the intersection, attempting to cross Airline Highway and continue straight onto Bluebonnet Boulevard. At that intersection, Airline Highway consists of three northbound lanes, one lane for northbound traffic to turn left onto Bluebonnet Boulevard, a median, two lanes for southbound traffic to turn left onto Coursey Boulevard, three southbound lanes that continue straight on Airline Highway, and one lane for southbound traffic to turn right onto Bluebonnet Boulevard. Ramos cleared all of the northbound lanes, as well as the center turn lanes, and was crossing the southbound lanes that proceed straight on Airline Highway when the passenger side of his truck was struck by a 2014 Ford F-350 truck driven by Bennett.

The intersection is controlled by a traffic signal and both Ramos and Bennett claimed that they legally entered the intersection pursuant to a green light, blaming the other for causing the accident. Ramos acknowledged his light changed to yellow as he passed under it; however, Ramos maintained that he lawfully entered and preempted the intersection before Bennett drove into him. Bennett was the first car in his lane of travel on Airline Highway and contended he was stopped for a red light and entered the intersection only after it turned green. Bennett denied seeing

2

Ramos's vehicle before the collision and further argued it was impossible for Ramos to have lawfully entered the intersection as Ramos described.

Ramos instituted this suit for damages against Bennett and Bennett's insurer, Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau").[1] Ramos stipulated that his damages did not exceed $50,000.00, and the matter proceeded to a bench trial. At trial there was no dispute that Bennett entered the intersection with a green light. The issue presented was whether Ramos preempted the intersection, rendering Bennett liable despite entering the intersection with a green light. After taking the matter under advisement, the trial court signed a judgment finding that Bennett was 100% at fault and liable to Ramos for damages totaling $56,961.48, which included past medical expenses in the amount of $6,961.48 and general damages in the amount of $50,000.00, as well as legal interest from the date of judicial demand, costs, and fees. The judgment further decreed that Bennett and Farm Bureau were solidarily liable for the entire judgment, with Farm Bureau obligated only up to its policy limits of $15,000.00.

Bennett and Farm Bureau[2] now appeal, contending the trial court erred in awarding damages beyond the maximum stipulated amount, in finding that Ramos preempted the intersection, and in failing to provide written reasons for judgment after a timely request.

## WRITTEN REASONS

Louisiana Code of Civil Procedure article 1917 requires the trial court to provide written reasons for judgment upon timely request. In this case, the defendant

---

[1]    Bennett filed and later dismissed a reconventional demand against Ramos and Ramos's insurer, State Farm Mutual Automobile Insurance Corporation, seeking his own damages arising from the accident.

[2]    Bennett and Farm Bureau have appealed together, raising the same arguments. For ease of reference, their arguments are referred to as being made by Bennett.

timely requested written reasons; however, the trial court did not comply with the request. Bennett assigns this as error on appeal.

The proper remedy for a trial court's failure to provide written reasons for judgment when a timely written request has been made is by application for supervisory writ or a motion to remand. **Wooley v. Lucksinger**, 2009-0571 (La. 4/1/11), 61 So.3d 507, 570; see also **Wagner v. DA Exterminating Co. of St. Tammany, Inc.**, 2020-0876 (La. App. 1st Cir. 4/16/21), 324 So.3d 105, 110 n.2. Although clearly erroneous, the trial court's failure to provide written reasons is not fatal to this appeal or grounds for reversal of the trial court's judgment. **Hall v. Folger Coffee Co.**, 2003-1734 (La. 4/14/04), 874 So.2d 90, 95 n.9. An appeal is taken from the actual judgment itself. **Mizell v. Willis**, 2020-0915 (La. App. 1st Cir. 7/29/21), ___ So.3d ___, ___ (2021 WL 3205363, *5 n.4). The trial court's reasons for judgment are merely an explication of the trial court's determinations and do not alter, amend, or affect the final judgment being appealed. **Wooley**, 61 So.3d at 572. Thus, Bennett's assignment of error is without merit. Further, we note that the trial court's judgment finding Bennett 100% at fault clearly reflects that it made a factual finding that Ramos preempted the intersection, which Bennett challenges on appeal.

**PREEMPTION OF THE INTERSECTION**

Louisiana Revised Statute 32:232 governs the duty of motorists facing traffic control signals and pertinently provides that motorists facing a green light may proceed straight through or turn right or left. However, motorists with a green light are required to stop and yield the right-of-way to other vehicles lawfully within the intersection at the time such signal is exhibited. La. R.S. 32:232(1)(a). Motorists facing a steady yellow light alone are thereby warned that the related green light is being terminated or that a red light will be exhibited immediately thereafter and that they shall not enter the intersection when the light turns red. See La. R.S. 32:232(2)(a).

4

A motorist with a green light has the right-of-way and may generally assume that motorists traveling on intersecting streets will obey the traffic signal and respect his right-of-way. See La. R.S. 32:232(1)(a); **Bourgeois v. Francois**, 245 La. 875, 886; 161 So.2d 750, 754 (1964); **Central National Insurance Co. of Omaha v. Bardsley**, 256 So.2d 734, 737 (La. App. 1st Cir. 1971), writ denied, 260 La. 1123, 258 So.2d 376 (La. 1972). However, a motorist cannot depend exclusively on a favorable green light. **Pourciau v. Melville**, 2018-0385 (La. App. 1st Cir. 9/21/18), 2018 WL 4520283, *2 (unpublished); **Hampton v. Marino**, 97-1345 (La. App. 1st Cir. 11/6/98), 725 So.2d 503, 509. The favored motorist has a duty to watch for vehicles already in the intersection when the light changed and is negligent only if he enters the intersection without waiting for the traffic already in the intersection to clear. **Palmisano v. Ohler**, 16-160 (La. App. 5th Cir. 12/7/16), 204 So.3d 1134, 1138. Thus, while a motorist with a green light is not obligated to look for approaching traffic that has not yet entered the intersection, the motorist must yield to traffic that has preempted the intersection and has a superior right-of-way. See La. R.S. 32:232(1)(a); **Baranco v. Cotten**, 98 So.2d 260, 262 (La. App. 1st Cir. 1957). A motorist claiming preemption of an intersection must show he lawfully entered the intersection at a proper speed and under the *bona fide* belief and expectation that he could safely negotiate the crossing without requiring an emergency stop by other vehicles. See **Archer v. Hurst**, 2005-1483 (La. App. 1st Cir. 6/9/06), 938 So.2d 741, 745; **Price v. City of Slidell**, 97-2066 (La. App. 1st Cir. 9/25/98), 723 So.2d 455, 460.

Whether a motorist preempted an intersection is a factual determination subject to the manifest error standard of review. See **Archer v. Hurst**, 938 So.2d at 745. Under the manifest error standard, the appellate court does not decide whether the factfinder was right or wrong; rather, it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding and whether

5

the finding is manifestly erroneous or clearly wrong. **Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC**, 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1116. In conducting its review, the appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. **Pinsonneault v. Merchants & Farmers Bank & Trust Co.**, 2001-2217 (La. 4/3/02), 816 So.2d 270, 279. Further, where the trial court's factual determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. **Bellard v. American Central Ins. Co.**, 2007-1335 (La. 4/18/08), 980 So.2d 654, 672.

Ramos testified that he was driving in the middle lane of traffic on Coursey Boulevard that proceeds straight across Airline Highway. Ramos explained that he stopped for a red light, and when the light turned green, he entered the intersection behind other vehicles. Ramos acknowledged that the light turned yellow while he was in the intersection; however, he maintained that the light was green at the time he entered the intersection. Ramos estimated he was traveling between 20 and 30 miles per hour, explaining that he slowed his speed as he traversed the intersection because the roadway was "bumpy," and the intersection includes a "hill." Ramos testified that he was broadsided as he "was coming down off the hill," just before he reached Bluebonnet Boulevard. This was after Ramos cleared the northbound lanes of Airline Highway, the center turn lanes for northbound and southbound traffic, and as he was traversing the southbound lanes – a distance of more than one hundred feet according to a marked photograph introduced into evidence by stipulation of the parties.

Bennett testified that he was the first vehicle stopped for the red light in the lane of travel that continues straight on Airline Highway and is closest to the turn lanes for southbound traffic to turn left onto Coursey Boulevard (*i.e.*, the first

6

southbound lane Ramos encountered). Bennett testified that it was dark outside, but lights from nearby parking lots lit the intersection and his view was unobstructed. Further, it was not raining, and Bennett was not distracted. Bennett testified that he began moving forward into the intersection only after his light turned green and that he moved forward less than ten feet before the accident occurred. Bennett indicated that before he moved forward he looked to his left, but not "all the way to the left," to confirm there were no other vehicles in the intersection and did not see Ramos. When asked to clarify, Bennett explained, "everybody looks a little bit, but not like all the way." Bennett conceded that he could have looked all the way to his left before moving into the intersection and, had he done so, he would have seen Ramos's vehicle.

Bennett disputed Ramos's version of the accident, denying that he broadsided Ramos and instead claiming that Ramos sideswiped him. Bennett further disputed Ramos's claim of preempting the intersection. Bennett testified that after the accident he returned to the intersection and timed the traffic light cycles. Bennett explained that based on his own calculations, the light Ramos faced turned red 2.1 seconds before the light he (Bennett) faced turned green. Bennett recalled that the accident occurred two seconds after his light turned green. Thus, Bennett calculated that Ramos's light had been red for four seconds before the accident. Consequently, Bennett argued, Ramos must have entered the intersection with a red light.

Bennett obtained a traffic signal inventory for the intersection that he believed confirmed his calculations. The inventory, which was introduced into evidence, reflects a series of light cycles and their timings expressed in coded symbols. Bennett conceded that he was not a trained traffic engineer and had no expertise in reading traffic signal inventories. Further, Bennett did not present the testimony of any other witness, expert or otherwise, to explain the coded information or corroborate his interpretation of the traffic signal inventory.

Tristan Hahn testified that he was driving in the lane next to Bennett and witnessed the accident. Hahn explained that he was stopped at the red light behind at least one other vehicle and, a moment after the light changed to green, Bennett moved forward and struck Ramos. Hahn stated he first noticed Ramos in the intersection just before the crash while Ramos was moving across the southbound lanes of Airline Highway. Hahn did not see Ramos reduce his speed or stop; nor did Hahn see Ramos speed up to pass through the intersection. Hahn explained "It appeared as though [Ramos was] trying . . . to maybe catch the end of -- of the previous light[.]" When asked if it was his opinion that Bennett would have seen Ramos if Bennett had looked to the left, and if Bennett could have avoided the accident by not entering the intersection, Hahn answered, "Yes."

The trial court's judgment in favor of Ramos clearly reflects a factual finding that Ramos preempted the intersection. Although Bennett attempted to discredit Ramos's version of the accident, he did not present the testimony of any other witness, expert or otherwise, to corroborate his own lay interpretation of the coded traffic signal inventory. Rather, the record reflects that the trial court was presented with two conflicting but permissible views of the evidence. The trial court obviously credited Ramos's testimony over Bennett's in finding Bennett at fault. When factual findings are based on the credibility of witnesses, the factfinder's decision to credit a witness's testimony must be given great deference by the appellate court. **Hoskins v. State Through Division of Administration, Office of Community Development**, 2018-1089 (La. App. 1st Cir. 2/25/19), 273 So.3d 323, 331-32. In view of this standard, we cannot say the trial court was manifestly erroneous in finding that Ramos preempted the intersection and that Bennett was at fault in causing the accident.[3] See **Amos v. Taylor**, 51,595 (La. App. 2nd Cir.

_____

[3] On appeal, Bennett's challenge to the trial court's determination of his fault is limited to the issue of preemption. Bennett does not otherwise challenge the trial court's allocation of 100% fault to him.

8

9/27/17), 244 So.3d 749, 754 (finding no manifest error in credibility determination regarding which motorists had red and green lights); **Gardner v. State Farm Mutual Automobile Ins. Co.**, 43,499 (La. App. 2nd Cir. 9/17/08), 996 So.2d 320, 324-25 (finding no manifest error in determination that motorist preempted intersection).

## DAMAGES

Prior to trial, Ramos stipulated that his damages did not exceed $50,000.00. However, the trial court awarded Ramos damages totaling $56,961.48, representing past medical expenses in the amount of $6,961.48 and general damages in the amount of $50,000.00. Bennett contends it was error for the trial court to award damages beyond the stipulated amount.[4] We agree.

The supreme court has explained:

> [A] plaintiff's stipulation to avoid a jury trial . . . is analogous to those circumstances in which a plaintiff's petition alleges that the amount in dispute does not exceed the jurisdictional limits of a court. Though applicable to the amount in dispute for jurisdictional purposes, we find the language of La. [Code Civ.] P. art. 5 instructive with respect to stipulations entered into to avoid a jury trial. La. [Code Civ.] P. art[.] 5 provides that the plaintiff remits that portion of the claim not prayed for. If a plaintiff alleges that the amount in dispute does not exceed the jurisdictional limit, the court is without jurisdiction to render a judgment in excess of its jurisdictional limit. Similarly, a plaintiff's stipulation has the effect of a judicial admission or confession and binds all parties and the court. Accordingly, it follows that any damages in excess of the stipulated amount are remitted by the plaintiff's voluntary decision to enter into the stipulation, and thus in no instance could damages exceed the stipulated amount.

**Miller v. LAMMICO**, 2007-1352 (La. 1/16/08), 973 So.2d 693, 708-09 (internal citations and footnotes omitted).

Ramos's stipulation that his damages did not exceed $50,000.00 had the effect of a judicial confession that precluded a damages award beyond that amount. In so

---

[4]    Bennett does not otherwise contest the amount of damages; therefore, the issue of whether a total damage award of $50,000.00 is excessive in this case is not before us for review.

recognizing, we specifically note that Ramos did not restrict his stipulation to the maximum amount of *general* damages. Rather, Ramos stipulated to a maximum amount of *total* damages, a fact Ramos does not contest on appeal. Since Bennett has not otherwise challenged the damage award as excessive, the trial court's judgment is amended to reduce the total damage award to $50,000.00 in accordance with the pre-trial stipulation.[5] Compare **Spears v. Raby**, 2013-0528 (La. App. 1st Cir. 2/18/14), 2014 WL 651359, *3 (unpublished), writ denied, 2014-0810 (La. 6/13/14), 140 So.3d 1190.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is amended to decrease the total damages awarded to $50,000.00. As amended, the judgment is affirmed. Costs of this appeal are assessed as follows: one-half to Tyler Bennett and Louisiana Farm Bureau Casualty Ins. Co.; and one-half to Miguel Ramos.

**JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.**

---

[5]  Bennett is legally incorrect in his assertion that the award in excess of the stipulated amount requires that we vacate the entire judgment for lack of subject matter jurisdiction. See **Spears v. Raby**, 2013-0528 (La. App. 1st Cir. 2/18/14), 2014 WL 651359, *3 (unpublished), writ denied, 2014-0810 (La. 6/13/14), 140 So.3d 1190; see also **Richard v. Calcasieu Cameron Hosp. Serv.**, 2019-338 (La. App. 3rd Cir. 12/11/19), 286 So.3d 547, 557, writ denied, 2020-00071 (La. 3/9/20), 307 So.3d 1028; **Bittner v. Scott**, 07-718 (La. App. 5th Cir. 2/6/08), 980 So.2d 5, 11.

# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT

## 2021 CA 0228

### MIGUEL RAMOS

### VERSUS

### LOUISIANA FARM BUREAU CASUALTY
### INSURANCE COMPANY AND TYLER B. BENNETT

**McDONALD, J., concurring.**

I agree with majority opinion and write separately to point out that there are indeed issues that, if explored, would have led to a different result in this case.

First, Farm Bureau relied upon the defendant himself to explain the light sequence at the Airline/Coursey intersection, rather than employing an unbiased witness, such as a traffic engineer, to interpret its "Traffic Signal Inventory" exhibit. Perhaps a qualified witness reading that exhibit could have corroborated Mr. Bennett's claim that Mr. Ramos ran the red light, and such would have been sufficient to find manifest error in this factual determination. Further, even if Mr. Bennett was competent to testify about the light sequencing, the record does not establish that the sequence he saw over a year after the accident was the same sequence that was operating on the night of the accident. Thus, I do not think Mr. Bennett's "belief" that Mr. Ramos' light changed to red approximately 4 seconds before the accident is sound.

Next, the trial court's 100% allocation of fault to Mr. Bennett is not at issue on appeal. Had the fault allocation been challenged, perhaps appellate review of the record would have supported a finding that the trial court manifestly erred in allocating 100% fault to Mr. Bennett and that the trial court should have instead found both Mr. Ramos and Mr. Bennett at fault in causing the accident.

Last, the amount of the trial court's $50,000 general damage award is not at issue on appeal. Had the quantum been challenged, perhaps appellate review of the record would have supported a finding that the general damage award was excessive.

Thus, limited to the issues we have before us, I think the result is correct.